KING *v.* CARDIN.

5-1683                                       319 S. W. 2d 214

Opinion delivered January 12, 1959.

*Wright, Harrison, Lindsey & Upton,* for appellant.

*James C. Cole,* for appellee.

GEORGE ROSE SMITH, J. This is an action for the wrongful death of Grover C. Dyer, who was struck and killed by a dump truck being driven by the appellant, Dyer's fellow employee. The jury returned a verdict for the appellee, Dyer's administratrix, fixed the damages at $5,000 for the estate and $45,000 for the decedent's widow and children, and attributed 5 per cent of the total negligence to Dyer.

A principal contention for the reversal of the judgment is that there is no proof of negligence on the part of the appellant. Our study of the record convinces us that the testimony presented a question for the jury on this point.

Dyer and King were employed by a contracting company, which was repaving with asphalt a highway south of Malvern. The hot asphalt is spread by what is called a Barber Green machine, which is a wide self-propelled vehicle that lays the asphalt along one entire traffic lane. As this machine moves slowly forward dump trucks carrying asphalt back up one at a time to a hopper at the front end of the machine, and the machine continues in motion and pushes each truck while the asphalt is being dumped into the hopper. The asphalt passes through the Barber Green machine and is distributed at the rear end of the machine in an even layer upon the highway. The operation requires a crew of ten or twelve men, some of whom work ahead of the machine, preparing the roadway, while others work behind the machine, smoothing the freshly laid asphalt.

On the day of the accident the west half of the highway was being repaved, in a northerly direction, with the east lane open to one-way traffic. King, who had arrived with a load of hot asphalt and had turned his truck around, started backing southward toward the front end of the Barber Green machine. King's backward movement was directed by another employee, Carl

Williams, who stood on the west shoulder of the highway near the front of the Barber Green machine. It was Williams' duty to align the dump truck so that its rear wheels would make proper contact with the rollers by which the moving Barber Green machine pushes the truck along while the hopper is being filled. At this time, however, the Barber Green machine was stationary, its operator having shut off the motor a short time earlier.

While King was backing toward the machine the decedent, Dyer, was walking in the same direction down the center of the highway. An unidentified car, traveling north in the east lane, came so close to Dyer that he stepped into the west lane, in the path of King's truck. Despite the shouts of Williams and others the truck hit Dyer and knocked him to the pavement. Dyer got up to his hands and knees, but the bed of the truck struck him and knocked him down again. He then tried to roll away, but his head was crushed by one of the wheels.

King's insistence upon his freedom from fault is based largely upon the assumption that Dyer was walking faster than the truck was traveling and had just passed the truck when he stepped into its path and was struck in practically the same instant. The testimony of the witness Cloud supports this view, but there is other substantial evidence indicating that Dyer had been ahead of the truck for an appreciable time before he stepped into the west lane. Two witnesses thought the truck was backing too fast; they estimated its speed at about eight miles an hour, which exceeds a man's walk. The witness Isaac Bell testified that Dyer was standing still with his back to the truck when he was hit.

On the issue of negligence there was also testimony that after Dyer was hit the second time the truck rocked as if the brakes had been applied, but then the truck continued to back and struck Dyer again. It was also shown that it was understood by all the crew that dump trucks were not to be backed up to the Barber Green

machine while its motor was shut off. The operator of the machine testified that when he turned off the motor King's truck had not begun to back and was standing still about a hundred feet away.

The appellant objected to the testimony about the practice just mentioned, but we think it was a proper matter for the jury to consider. The Barber Green machine was the hub around which the activities of the whole crew revolved. When the machine was stopped the trucks were not to come up to it, for the newly laid asphalt might be damaged if a vehicle backed against the machine while it was stationary. Even though the practice was not adopted as a safety measure, the jury could take it into account as a factor bearing upon the negligence of King and the contributory negligence of Dyer.

We find no error in the court's refusal to give an instruction telling the jury in substance that if King as a prudent person was backing his truck under the direction of Williams, and if Williams was in a position to observe the roadway behind the truck, then King had a right to rely upon Williams and a right to assume the roadway was clear and would not be negligent merely by reason of backing his truck under those circumstances. This instruction disregarded King's possible negligence in starting to back while the Barber Green machine was idle and might have erroneously precluded the jury from considering that fact.

Nineteen days before the trial the defendant, by interrogatories, asked for the names of the witnesses that the plaintiff expected to call to prove certain specified allegations of the complaint. Ark. Stats. 1947, § 28-355. Two days after the service of the interrogatories the plaintiff answered that her attorney informed her that he expected to present three named persons as witnesses to the facts mentioned. At the trial, however, the plaintiff called three additional witnesses not named in her answer to the interrogatories. In reply to the defendant's objection to the testimony of these wit-

nesses plaintiff's counsel explained that he did not discover or interview these witnesses until after the interrogatories had been answered. The court then overruled the objection and allowed the witnesses to testify.

The appellant insists that the plaintiff was under a duty to amend her response when additional witnesses were found. Otherwise, it is pointed out, a party can never obtain the names of witnesses discovered by his adversary within fifteen days before trial, as the statute allows that much time for answering interrogatories. We agree with this reasoning and hold that the additional names should have been supplied by amendment. It does not appear, however, that the omission was prejudicial in this case. The three additional witnesses were all members of the paving crew and would normally be interviewed in a routine investigation by the defendant. They were in no sense surprise witnesses; indeed, the defendant did not assert surprise as a basis for his objection to their testimony. In the absence of prejudice there is no reversible error. *Phoenix Cement Sidewalk Co.* v. *Russellville Water & Light Co.*, 101 Ark. 22, 140 S. W. 996.

We are not impressed by the argument that the Workmen's Compensation Act prevents an employee, or his personal representative, from maintaining an action for the negligence of a fellow employee. Our statute merely provides that the remedies under the act are exclusive of other remedies against the employer. Ark. Stats., § 81-1304. The making of a claim for compensation does not affect the right of the employee or his dependents to maintain an action against a third person. § 81-1340. Under a statute like ours a negligent coemployee is regarded as a third person. *Botthof* v. *Fenske*, 280 Ill. App. 362; *Kimbro* v. *Holladay,* La. App., 154 So. 369; *Churchill* v. *Stephens,* 91 N. J. L. 195, 102 Atl. 657.

The only other point that need be discussed is the size of the verdicts. The award of $45,000 for the widow and children is not excessive. Dyer, a man of forty-

nine with an expectancy of more than twenty-one years, had been earning from fifty to sixty-five dollars a week. He was survived by his widow and nine children, the youngest of the four minor children being only four years old. In view of the pecuniary loss to his dependents and the mental anguish shown by the proof we do not regard the award as excessive.

On the other hand, the evidence does not support the $5,000 verdict in favor of the estate. The funeral expenses, including a monument, totaled only $1,263.30; so the rest of the award must represent compensation for pain and suffering. There is no indication that Dyer was conscious after his head was struck by the wheel of the truck. Nor is there any proof that he actually experienced pain during the two or three seconds that elapsed after he was first felled by the slowly moving vehicle. In the absence of proof the record does not sustain an award of more than $50 as essentially nominal damages for the striking.

The judgment is affirmed on condition that a remittitur of $3,752.33, which is the excess when Dyer's contributory negligence is taken into account, be filed within seventeen calendar days; otherwise the judgment will be reversed and the cause remanded.

JOHNSON, J., not participating.