NANCY YOUNG NEAL v. J. P. OLIVER

5-4820                                    438 S.W. 2d 313

Opinion Delivered March 17, 1969

*Sexton* & *Wiggins* for appellant.

*Shaw* & *Bedwell* for appellees.

J. FRED JONES, Justice.   The appellant, Nancy Young Neal, sustained a compensable injury to her left hand while in the course of her employment as a mangle operator for 7-11 Laundry and Cleaners in Fort Smith. 7-11 Laundry and Cleaners is a domestic corporation with J. P. Oliver, his wife and son as the sole owners of the corporate stock.   Oliver is the president of the cor-

poration and was general manager and supervisor of employees at the time of appellant's injury. 7-11 Laundry and Cleaners came within the provisions of the Workmen's Compensation Law and the appellant was paid full compensation benefits for her injury. The appellant subsequently filed suit in the Sebastian County Circuit Court for personal injuries against Mr. and Mrs. Oliver alleging negligence in assigning her to work on an unsafe machine and in failing to provide the machine with a protective device, in the form of a safety bar, in violation of the state safety code.

On motion for summary judgment, the trial court dismissed the complaint under findings as follows:

"That the Plaintiff, Nancy Young Neal, while employed by the Defendant, J. P. Oliver, and within the course of her employment, did, on April 30, 1965, sustain an injury while operating a mangle ironing machine.

That the Defendant carried full Workmen's Compensation benefits and that the Plaintiff received full compensation benefits including medical and disability both temporary and permanent.

That in view of the pleadings, the Motion and Affidavit attached thereto, the Court finds there is no genuine issue as to any material facts. That question of law is presented to the Court, and the Court finds, as a matter of law, that the Plaintiff, receiving, and accepting full Workmen's Compensation benefits from the Defendant, J. P. Oliver, is therefore barred from filing a suit in negligence at common law against the same employer, J. P. Oliver."

On appeal to this court, the appellant designates the following point for reversal:

"Appellee, a supervisor, officer and manager, is a third person within the meaning of the Workmen's Compensation statute and, as such, may be held to answer for his own negligence."

The appellant says "this cause involves the sole issue as to whether or not the manager of a corporate business is a third person within the meaning of the Arkansas Workmen's Compensation Laws, Ark. Stat. Ann. § 81-1301, *et seq.,*" and appellant cites several cases from other jurisdictions wherein managers of corporate businesses have been held to be fellow-employees against whom negligent tort actions will lie. But we do not consider the issue in the case at bar to be quite as broad and general as the appellant indicates. The sole issue, as we view the facts in this case, is whether Mr. Oliver, the manager of the corporate business involved in *this* case, was a third party within the meaning of the Arkansas Workmen's Compensation Law (Ark. Stat. Ann. § 81-1340 (a) (Repl. 1960), under the specific facts of this particular case. We conclude that he was not for the reason that he was also the appellant's employer.

The compensation law does not *give or create* a cause of action against a third party causing a compensable injury to the employee, but only makes it plain that such common law remedy as the employee already had against tort feasors prior to the enactment of the Workmen's Compensation Act, was fully preserved and left unchanged by the act when the tort feasor is other than the employer.

Arkansas Statutes Annotated § 81-1340 (a) (Repl. 1960) is as follows:

"(1) The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his dependents, to make claim or maintain an action in court against any third party

for such injury, but the employer or his carrier shall be entitled to reasonable notice and opportunity to join in such action.   If they, or either of them, join in such action they shall be entitled to a first lien upon two-thirds [2/3] of the net proceeds recovered in such action that remain after the payment of the reasonable costs of collection, for the payment to them of the amount paid and to be paid by them as compensation to the injured employee or his dependents.

(2)   The commencement of an action by an employee or his dependents against a third party for damages by reason of an injury, to which this act [§§ 81-1301—81-1349] is applicable, or the adjustment of any such claim shall not affect the rights of the injured employee or his dependents to recover compensation, but any amount recovered by the injured employee or his dependents from a third party shall be applied as follows: Reasonable costs of collection shall be deducted; then one-third [1/3] of the remainder shall, in every case, belong to the injured employee or his dependents, as the case may be; the remainder, or so much thereof as is necessary to discharge the actual amount of the liability of the employer and the carrier; and any excess shall belong to the injured employee or his dependents.''

The term ''third party'' is not defined in the act and the first and second parties are not even mentioned, but from the language employed in the context it is used in § 1340 (a), supra, ''third party'' can only mean some person or entity other than the first and second parties involved, and the first and second parties can only mean the injured employee and the employer or one liable under the compensation act.   Thus, it is obvious from the wording of the statute, as well as common sense, that a ''third party'' within the meaning of the act, must be some party other than an employer who is

liable under the act and to whom is also given a statutory right of subrogation against a third party tort feasor. The terms "employer," "employee" and "employment" are defined in the compensation act, Ark. Stat. Ann. § 81-1302 (a) (b) and (c) (Repl. 1960), as follows:

"(a) 'Employer' means any individual, partnership, association or corporation carrying on any employment, or the receiver or trustee of the same, or the legal representative of a deceased employer.

(b) 'Employee' means any person, including a minor, whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, written or oral, expressed or implied, but excluding one whose employment is casual and not in the course of the trade, business, profession or occupation of his employer. Any reference to an employee who has been injured shall, when the employee is dead, also include his legal representative, dependents and other persons to whom compensation may be payable.

(c) 'Employment' means:

(1) Every employment carried on in the State in which five [5] or more employees are regularly employed by the same employer in the course of business or businesses, except domestic service, agricultural farm labor, institutions maintained and operated wholly as public charities, the State of Arkansas and each of the political subdivisions thereof, any person engaged in the vending, selling or offering for sale, or delivery directly to the general public, any newspapers, magazines or periodicals, or acting as sales agent or distributor as an independent contractor of or for any such newspaper, magazine or periodical.

(2) Every employment in which two [2] or more employees are employed by any person engaged in building or building repair work.

(3) Every employment in which one or more employees is employed by a contractor who subcontracts any part of his contract.

(4) Every employment in which one or more employees is employed by a subcontractor.''

Appellant correctly points out that this court has held a fellow-employee to be a third party within the meaning of the act, and cites *King* v. *Cardin,* 229 Ark. 929, 319 S.W. 2d 214. In the *King* case King drove a dump truck in hauling asphalt on a highway construction job and Dyer spread the asphalt hauled by King. They both were employed by the same contractor. King negligently backed a dump truck over Dyer and fatally injured him. Dyer was not working *for* King, he only worked *with* King and, of course, the compensation act did not absolve King from the legal consequences of his own acts of negligence toward Dyer while they both were working for the same employer. In the *King* case we said:

''We are not impressed by the argument that the Workmen's Compensation Act prevents an employee, or his personal representative, from maintaining an action for the negligence of a fellow employee. Our statute merely provides that the remedies under the Act are exclusive of other remedies against the employer. Ark. Stats. § 81-1304. The making of a claim for compensation does not affect the right of the employee or his dependents to maintain an action against a third person. § 81-1340. Under a statute like ours a negligent co-employee is regarded as a third person. *Botthof* v. *Fenske,* 280 Ill. App. 362; *Kimbro* v. *Holladay,* La. App., 154 So. 369; *Churchill* v. *Stephens,* 91 N.J.L. 195, 102 Atl. 657.''

The appellant cites *Brooks* v. *Claywell*, 215 Ark. 913, 224 S.W. 2d 37, and argues that since we have held a president of a corporation to be also an employee for the purpose of bringing the business under the provisions of the compensation act, we should now "pierce the corporate veil" and hold the president and manager of a family corporation to be a fellow-employee for the purpose of third party liability. We do not agree with this contention, for the difference lies in the employee-employer relationship in determining third party liability as in the case at bar and as distinguished from the title of the chief officer of the business entity and nature of the tasks he performs in determining liability for compensation coverage and jurisdiction of the Commission under the act as in *Brooks* v. *Claywell*. One is the relationship between two individuals; the other is the relationship between one individual and the business. Brooks was the president of a family corporation and worked in the business along with four other regular employees. Brooks was found to be an employee for the purpose of bringing his business under the definition of "employment" as defined in § 81-1302 (c), supra, and his business was held to be subject to the jurisdiction of the Workmen's Compensation Commission, Brooks constituting the fifth employee for that purpose. The question of whether Brooks could have also been a third party tort feasor against whom an injured fellow-employee could have maintained a separate tort action was not raised in that case.

The Workmen's Compensation Act, Ark. Stat. Ann. §81-1304 (Repl. 1960) provides as follows:

"The rights and remedies herein granted to an employee subject to the provisions of this act [§§ 81-1301—81-1349], on account of injury or death, shall be exclusive of all other rights and remedies of such employee, his legal representative, dependants, or next kin, or anyone otherwise entitled to recover damages from such employer on account of such

injury or death, except that if an employer fails to secure the payment of compensation, as required by the act, an injured employee, or his legal representative, in case death results from the injury, may, at his option, elect to claim compensation under this act or to maintain a legal action in court for damages on account of such injury or death. In such action it shall not be necessary to plead or prove freedom from contributory negligence nor may the defendant employer plead as a defense that the injury was caused by the negligence of a fellow-servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.''

It is well established that a co-employee may be liable as a third party tort feasor in a workmen's compensation case, and the predominent view does not distinguish between a co-employee who occupies a supervisory position and one who has not achieved a status of such prominence. *Tully* v. *Gardner's Estate,* 196 Kan. 137, 409 P. 2d 782; *Roda* v. *Williams,* 195 Kan. 507, 407 P. 2d 471. See also: *Gardner* v. *Stout,* 342 Mo. 1206, 119 S.W. 2d 790, involving the foreman of a flour mill; *Ellis* v. *Garwood,* 168 Ohio St. 241, 152 N.E. 2d 100, involving the head of an engineering section; *Webster* v. *Stewart,* 210 Mich. 13, 177 N.W. 230, where a corporate vice-president was involved. *Churchill* v. *Stephens,* 91 N.J.L. 195, 102 A. 657, where a shop foreman was sued.

The phraseology of the statute controls in many of the states in suits against fellow-employees by injured workmen and the case results are as varied as the statutory phraseology. In all the states the cases seem to turn on their own peculiar facts.

In *Echols* v. *Chattooga Merchantile Company,* 74 Ga. App. 18, the general manager of a company was held liable in tort for an assault on a fellow-employee. The court held in that case: ''The defendant Berry and

Chattooga Merchantile Company are not identical parties. His duty not to harm the employee was both as representative of the company and as an individual."

In *Evans* v. *Rohrbach, et al.*, 35 N.J. Super. 260, an employee was injured in the course of his employment while spreading a liquid plastic material inside a tank and an explosion occurred. Safety devices were not furnished and installed as required by the labor safety law. The injured employee was paid compensation but sued the president of the corporation for failure to furnish the required safety devices. The suit was dismissed in that case, on the theory that the president was too far removed in the chain of authority, the employer being a large corporation.

In *Leidy* v. *Taliaferro*, 260 S.W. 2d 504, a corporate employee was riding in a corporation truck being driven by his father who was also an employee of the corporation. A suit against the corporate president and a corporate stockholder was permitted to go to the jury on the question as to whether plaintiff's father, at the time of the accident, was acting as the personal agent of the defendant corporate president. In that case the two employees were on a personal mission for the company president to pick up personal furniture belonging to the president.

In *Schumacher* v. *Leslie*, 232 S.W. 2d 913, an injured workman who had received workmen's compensation filed suit against the attending physician for alleged malpractice in connection with the industrial injury. In permitting the suit against the physician as a third party feasor, the Missouri Court said: "A third person is one with whom there is no master and servant relationship under the Act. * * * Section 3699, supra, recognizes common law rights against third persons and indicates an intention to preserve rather than abrogate such rights. No employer and employee or master and servant relationship existed between the instant plain-

tiff and defendant. The benefits of the Act accrue to those who share its burdens. Defendant did not share its burdens. He is not entitled to its benefits. Hence, we conclude he was a stranger under the Act, a 'third person.' ''

In *Peet* v. *Mills,* 136 P. 685, an early Washington case, a workman was injured in a train collision which occurred in a fog. The railroad system was equipped with a block signal system for use in foggy weather, but when a new president of the company assumed control, the company ceased operating the block signal. Dismissal of the suit against the president was affirmed on appeal because the workman was covered by workmen's compensation.

In the case of *Rehn* v. *Bingaman,* 36 N.W. 2d 856, a Nebraska Workmen's Compensation Act had preserved to an injured employee his common law remedy and in holding that a fellow-employee was a third party within the meaning of the act, the court said:

> ''We conclude that the employee's right of action against third persons for negligence proximately causing his injuries was a common-law right already existent outside of and notwithstanding the Workmen's Compensation Act. In other words, section 48-118, R.S. 1943, not only preserved the employee's common-law right to recover from third persons as it was before the act, but also, in the final analysis, simply gave the right of legal subrogation to his employer without depriving the employer of his right to equitable subrogation under circumstances requiring its application. *Burks* v. *Packer,* 143 Neb. 373, 9 N.W. 2d 471.

> * * * [I]t is generally the rule that a fellow employee would also be such person regardless of the capacity of his employment, *so long as he did not occupy the relationship of employer of plaintiff.*

57 C.J.S., Master and Servant, § 578, p. 348; 35 Am. Jur. Master and Servant, § 425, p. 954, and § 526, p. 955, Annotation, 99 A.L.R., page 422; *Hudson* v. *Moonnier*, 8 Cir. 94 F. 2d 132, Id., 8 Cir., 102 F. 2d 96.'' (Emphasis supplied).

Thus it is seen that a president or manager of a corporation or a business may or may not be a fellow-employee to others who are employed by the same corporation or in the same business, and he may or may not be personally liable for his tort causing injury to a fellow-employee, depending on the nature of the tort in some states and the scope of his duties and authority in others. None of the cited cases quite reach the problem presented in the case at bar. They all deal with situations where the fellow-employee tort feasor is something less than the employer also.

The appellant has cited no case, and we have found none, where the owner and president of a family corporation who hires, fires and directs his employees and who has provided them workmen's compensation insurance coverage, has been held personally liable in tort for injuries sustained by negligently maintained equipment or unsafe working conditions under a workmen's compensation statute similar to our own. Under compensation coverage the employer gives up the defense of contributory negligence and the injured employee is relieved of the burden of proving negligence but he gives up the right to sue his employer in a court of law.

A president of a corporation or the owner of a business may or may not be an employee of the corporation, or in the business, for the purpose of determining liability for compensation benefits under the Workmen's Compensation Law. That would depend on what he does. *Brooks* v. *Claywell, supra.*

In the case at bar Mr. and Mrs. Oliver owned the corporate business and they, as well as the corporation, were the employers.

Arkansas Statutes Annotated § 81-1338 (c) (Repl. 1960) provides as follows:

"No policy of insurance shall be issued against liability under this act [§§ 81-1301—81-1349] unless such policy cover the entire liability of the employer as to the business or businesses identified in the policy. As to any questions of liability between the employer and the insurer the terms of the policy shall govern."

Arkansas Statutes Annotated § 81-1339 (Repl. 1960) provides as follows:

"Any employer required to secure the payment of compensation under this act [§§ 81-1301—81-1349] who fails to secure such compensation shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than five hundred ($500.00) dollars, or by imprisonment for not more than one [1] year, or by both such fine and imprisonment. This section shall not affect any other liability of the employer under this act."

The Olivers procured workmen's compensation insurance for the benefit of their employees, including the appellant, and the appellant was paid the full compensation benefits under the compensation act and the insurance so procured. The appellant was not injured by a direct negligent act of Oliver, he wasn't even on the premises when the appellant was injured. The negligence the appellant complains of is Oliver's failure to provide a safe place for her to work as required by state law. Certainly the safety requirements under the labor laws should be enforced in this state and their violation should not go unpunished, but if Oliver was merely a third party fellow-employee, he had no duty to furnish a place for appellant to work—safe or otherwise. If the corporation was the employer and Oliver was the mere president, he was not personally liable in tort or

under the compensation act for injuries sustained by corporate employees who are injured on defective corporate owned and maintained machines and equipment. If Oliver was the actual employer, his corporate title made no difference. His business was within the provisions of the Workmen's Compensation Law, the appellant's injury was compensable under the compensation law, and her rights thereunder are exclusive.

We hold that an employer-employee relationship existed between Oliver and the appellant at the time of her injury. We conclude that in no event could Oliver have been a "third party" within the meaning of Ark. Stat. Ann. § 81-1340 (a), supra, under the pleadings and facts of this case, and that the judgment of the trial court should be affirmed.

Affirmed.

FOGLEMAN and BYRD, JJ., dissent.

JOHN A. FOGLEMAN, Justice. I respectfully dissent. I agree with the majority in many particulars. I agree that the question presented is as narrow as the majority state it to be. I would keep it just that narrow.[1] In order to do so, and to put the question in proper perspective, it is necessary that more of the background on which the summary judgment was granted be disclosed. It was alleged in the complaint that Oliver had actual knowledge of the lack of the proper safety guard required by the safety code on a machine operated by appellant. It was also alleged that Oliver specifically assigned appellant to the operation of this machine without remedying the defect or warning appellant. It was further alleged that Oliver had twice previously been warned by the Department of Labor of this deficiency and of the clear and present danger posed to the safety of employees required to operate it. These

---

[1] In this respect it should be made clear that there is no appeal from the summary judgment in favor of Mrs. Oliver.

allegations were not controverted by the affidavit in support of Oliver's motion for summary judgment.

I also agree that a "third party" is an *entity* other than the employer and employee.

I further agree that most of the cases cited in the majority opinion really fail to reach the issue here. It seems to me that at least one of them lends more support to my position than to that of the majority, as will presently be demonstrated.

I do not agree that appellant is asking us to pierce the corporate veil. Actually the reverse is true. Appellee, the majority stockholder in a family corporation, has asked that the corporate veil hung by him and his family for their personal protection against business creditors be pierced for his own benefit when recognition of the separate entity would subject him to liability in a personal capacity as an employee of the corporate structure erected by him. Arkansas is quite liberal in affording corporate protection to a business enterprise. We have even permitted the formation of one-man corporations. Both the legislative and judicial branches have generally required a corporate status more similar to the leopard than to the chameleon. The holding of the majority would let appellee change his protective coloration as the mood strikes him.

The rule announced by the majority in this case is this: if a majority stockholder of a family corporation, who also manages the business and supervises the employees, is sued as a "third party" tort-feasor by an employee of the corporation he may, at his option, disregard the corporate fiction he created and seek the immunity from common law tort liability he would have had as an individual employer under the Workmen's Compensation Law. Such a result allows the appellee to "eat his cake and have it too" and is patently inconsistent with the rules heretofore announced by this court pertaining to "piercing the corporate veil."

In *Rounds & Porter Lbr. Co.* v. *Burns,* 216 Ark. 288, 225 S.W. 2d 1, this court said, "It is only when the privilege of transacting business in corporate form has been illegally abused to the injury of a third person that the corporate entities should be disregarded." This decision was followed by *Plant* v. *Cameron Feed Mills;* 228 Ark. 607, 309 S.W. 2d 312. There the corporate veil was pierced in an equity action to enforce a labor and materialman's lien on a building. The defendant corporations were a parent and a subsidiary which the court said were identical for the purposes of the suit. We held that even though the corporations were legally separate entities, it would constitute a constructive fraud on the lien claimant to allow them to claim entirely separate existences. Although we said that justice required the piercing of the fiction of the corporate entity, we added that the rule should be applied with great caution.

In *Black and White* v. *Love,* 236 Ark. 529, 367 S.W. 2d 427, we reaffirmed our conclusions as set out in *Round & Porter Lbr. Co.* v. *Burns,* supra, and pierced the veil of a corporation to prevent, "putting fiction above right and justice." Finally, in *Banks* v. *Jones,* 239 Ark. 396, 390 S.W. 2d 108, we refused to pierce the corporate veil, saying, "We agree with the chancellor that the evidence in the instant case does not support a finding that there was an illegal abuse of the corporate form to the injury of the appellant."

Thus the majority of the court have for the first time permitted the corporate fiction to be disregarded at the option of the incorporaters for their own benefit and not for the benefit of one injured by the illegal abuse by another of the privilege of transacting business as a separate corporate entity. This holding is not only inconsistent with our previous decisions with reference to the equitable rule permitting the piercing of the corporate veil, but it is inconsistent with our holding in *Brooks* v. *Claywell,* 215 Ark. 913, 224 S.W. 2d 37. There we

held that the managing officer of a corporation, owned by him, his sister and brother-in-law, from which he took all the profits and of which he was in absolute control, was an employee of the company for the purpose of determining whether that company was subject to the Workmen's Compensation Act.

My position is not unprecedented. In *Adams* v. *Fidelity and Casualty Co. of New York,* 107 So. 2d 496 (La. App. 1958), the Louisiana court had before it a case which is closely analogous to this one. In that case plaintiff employee sought to sue several high-ranking corporate officers and stockholder directors of the corporation employer as a "third party" under a workmen's compensation statute similar to our own. The defendants contended that because the complaint alleged that they failed to perform duties which arose out of their position as officers and directors of the corporation they were therefore liable only to their corporate employer and not to a third party such as an employee. This contention was rejected. It is strikingly similar to the majority's assertion that if the corporation were the employer and Oliver were the mere president he was not liable in tort or under the compensation act for injuries sustained by corporate employees who are injured on defective corporate owned and maintained machines and equipment.

The *Adams* case has been followed in *Travelers Ins. Co.* v. *Brown,* 338 F. 2d 229 (5th Cir. 1965) and *Herbert* v. *Blankenship,* 187 So. 2d 798 (La. App. 1966). In the latter case two of the defendants were officers and the stockholders of the employer corporation. The court there said that officers or agents of corporate employers may themselves be liable in part insofar as their own personal negligence contributed to the accident causing injury to an employee even though the exclusive remedy against the corporation itself for the workman's injuries was in compensation. Other cases in which suits by injured employees against officers, directors and

stockholders of a corporation as "third parties" have been permitted include *Webster* v. *Stewart*, 210 Mich. 13, 177 N.W. 230 (1920); *Witherspoon* v. *Salm*, Ind. App., 237 N.E. 2d 116 (1967).

In *Echols* v. *Chattooga Mercantile Co.*, 74 Ga. App. 18, 38 S.E. 2d 675 (1946), cited by the majority, the defense of the general manager of the corporation against a tort action by an employee was that the manager was the alter ego of the corporation. The court rejected this defense. In *Evans* v. *Rohrbach*, 35 N.J. Super. 260, 113 A. 2d 838 (1955), also cited by the majority, the court indicated that a director or officer who committed a tort or directed a tortious act to be done or who participated or cooperated therein was liable to third persons injured thereby, even though liability might also attach to the corporation.

I should point out that the decision in *Peet* v. *Mills*, 76 Wash. 437, 136 P. 685 (1913) might appear to give some support to the position of the majority were it not for the fact that the Workmen's Compensation statute involved abolished all civil actions arising out of an employment except those expressly saved by the act. The only actions saved were those for injuries caused by the act of a third party not in the same employ as the injured workman.

I cannot sanction the misuse of the equitable device of piercing the corporate veil to arrive at a desired result under the Workmen's Compensation Law. It is, perhaps, a hard rule of law that would require the court to acknowledge the separate legal existence of 7-11 Laundry Cleaners, Inc. from appellee J. P. Oliver who is the principal stockholder and manager. However, it is my view that this problem addresses itself to the legislature, not the courts. I would reverse.

BYRD, J., joins in this dissent.