SIMMONS FIRST NATIONAL BANK,
Administrator, et al. *v.*
James THOMPSON et al.

84-254                                    686 S.W.2d 415

Supreme Court of Arkansas
Opinion delivered March 25, 1985

*McMath Law Firm, P.A.,* by: *Winslow Drummond,* for appellants.

*Barber, McCaskill, Amsler, Jones & Hale,* by: *Robert L. Henry, III,* for appellee James Thompson.

*Shackleford, Shackleford & Phillips,* by: *Dennis L. Shackleford,* for appellee Gerald Golden.

*Anderson & Kilpatrick,* by: *Overton S. Anderson,* for appellee Don Crysell.

*Allen, Cabe & Lester,* by: *V. Markham Lester,* for appellee Eric Smith.

GEORGE ROSE SMITH, Justice. This multi-party action

for personal injuries and wrongful deaths arose out of a 1981 accident at the International Paper Company's paper mill in Pine Bluff. Separate crews at the mill permitted two different chemicals to flow into the mill's sewer system. The chemicals intermingled at some point in the system and reacted to create a poison gas that entered the atmosphere through an open grate sewer covering. At least two employees died from the effects of the gas; others were injured. All the employees were covered by the workers' compensation law.

This tort action was brought by injured employees and by the personal representatives of two that died. The four defendants are supervisory employees of the company: the mill manager, the pulp mill superintendent, the superintendent of engineering, and the supervisor of safety. None of the defendants was present at the place of the accident or had any active part in the work that caused the chemicals to enter the sewer. The complaint alleged negligence on the part of each defendant in failing to discharge his responsibility to make the premises safe.

Upon proof of the foregoing essential facts the trial court sustained the defendants' motion for summary judgment, on the ground that as supervisory employees the defendants are protected from personal liability by the same immunity that the statute confers upon the employer itself, the remedies provided by the statute being exclusive. Ark. Stat. Ann. § 81-1304 (Supp. 1983). For reversal the appellants argue that on the facts of this case the supervisory employees should not be immune from liability for their own negligence.

Our cases have not passed upon this problem. Our two most pertinent decisions lie at opposite ends of the spectrum. In *Neal* v. *Oliver*, 246 Ark. 377, 438 S.W.2d 313 (1969), relied on by the defendants, the employer was an incorporated laundry owned by Oliver and his wife and son. Oliver himself was the president and general manager. The plaintiff was an employee who had been injured while operating a defective ironing machine. In a tort action against Oliver we held that he was not liable because "he was also the appellant's employer."

On the other hand, immunity was denied in *King* v. *Cardin*, 229 Ark. 929, 319 S.W.2d 214 (1959), relied on by the plaintiffs. There two fellow employees, a truck driver and a laborer, were working with others on a highway paving project. King, the truck driver, backed up his truck negligently and struck Cardin's decedent, who was killed. We permitted an action against the truck driver for wrongful death, under the section of the statute providing that an employee's compensation claim against the employer does not affect his right to sue a "third party." Section 81-1340 (Repl. 1976). Our reasoning, supported by cases from other jurisdictions: "Under a statute like ours a negligent co-employee is regarded as a third person."

This case falls between the two extremes. Professor Larson's own view, expressed without regard to the cases, would unhesitatingly deny liability in this case. He insists that workers' compensation coverage should be viewed neither as a branch of tort law nor as a system of social insurance. He says, in part: "Almost every major error that can be observed in the development of compensation law, whether judicial or legislative, can be traced either to the importation of tort ideas, or, less frequently, to the assumption that the right to compensation resembles the right to the proceeds of a personal insurance policy." Larson, Workmen's Compensation Law, § 1.20 (1984). After pointing out that the "tort-connection fallacy" can at times be harmful to the employee and at times to the employer (*ibid.*), Larson sums up the problem quite simplistically:

> The right to compensation benefits depends on one simple test: Was there a work-connected injury? Negligence, and, for the most part, fault, are not in issue and cannot affect the result. Let the employer's conduct be flawless in its perfection, and let the employee's be abysmal in its clumsiness, rashness and ineptitude; if the accident arises out of and in the course of the employment, the employee receives his award. Reverse the positions, with a careless and stupid employer and a wholly innocent employee; the same award issues.

Thus, the test is not the relation of an individual's personal quality (fault) to an event, but the relationship of an event to an employment. The essence of applying the test is not a matter of assessing blame, but of marking out boundaries.

As our own *Neal* and *King* cases, supra, illustrate, the courts have not uniformly adopted Larson's reasoning nor uniformly reached his recommended results. Nevertheless, with respect to the liability of supervisory employees the great majority of the decisions are in harmony with Larson's conclusions. Their reasoning has usually been that since an employer is immune under the statutes from a negligent failure to provide employees with a safe place to work, the same immunity protects supervisory employees when their general duties involve the overseeing and discharging of that same responsibility. Typical recent decisions include *Vaughn* v. *Jernigan,* 144 Ga. App. 745, 242 S.E.2d 482 (1978); *Kerrigan* v. *Errett,* 256 N.W.2d 394 (Iowa 1977); *Athas* v. *Hill,* 458 A. 2d 859 (Md. Spec. App. 1983); *Dawley* v. *Thisius,* 231 N.W.2d 555 (Minn. 1975); *Greco* v. *Farago,* 477 A. 2d 98 (R.I. 1984); *Blumhardtr* v. *Hartung,* 283 N.W.2d 229 (S.D. 1979); and *Laffin* v. *Chemical Supply Co.,* 77 Wis. 2d 353, 253 N.W.2d 51 (1977).

A Missouri court gave a persuasive practical justification for the majority view in *State ex rel. Badami* v. *Gaertner,* 630 S.W.2d 175 (Mo. App. 1982):

Under present day industrial operations, to impose upon executive officers or supervisory personnel personal liability for an accident arising from a condition at a place of employment which a jury may find to be unsafe would almost mandate that the employer provide indemnity to such employees. That would effectively destroy the immunity provisions of the workmen's compensation law.

We are solidly in agreement with the majority view. As we all know, the purpose of workers' compensation statutes was to change the common law by shifting the burden of all work-related injuries from individual employers and em-

ployees to the consuming public. In that effort the matter of fault, as Larson points out, is ordinarily immaterial. Employers were compelled to give up the common-law defenses of contributory negligence, fellow servant, and assumption of risk. Employees were compelled to give up the chance of recovering unlimited damages in fault-related cases in return for a certain recovery in *all* work-related cases. The plaintiffs here are attempting to return to the common-law system based on fault, when it is to their advantage to do so, but at the same time to retain the assured benefits of workers' compensation regardless of fault. The invalidity of their position is too plain to require further discussion.

Affirmed.