

# ARKANSAS COURT OF APPEALS

DIVISIONS I, II & IV
No. CV-12-219

| | | |
|---|---|---|
| WILLIAM CURTIS | | **Opinion Delivered** November 6, 2013 |
| | APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [No. G101427] |
| V. | | |
| MICHAEL LEMNA and NEW CHAMPIONS GOLF & COUNTRY CLUB | | |
| | APPELLEES | AFFIRMED |

## LARRY D. VAUGHT, Judge

Following a golf-cart accident that occurred at the New Champions Golf Course (Pinnacle Country Club) in Rogers, Arkansas, the Arkansas Workers' Compensation Commission found that appellee Michael Lemna was immune from the negligence claims asserted by his co-employee, appellant William Curtis. In its resolution of the claim, the Commission relied on the Arkansas Workers' Compensation Act's provision of immunity to employers and employees who carry out the employer's duty to maintain a safe workplace. Curtis argues three issues on appeal: (1) the Commission acted beyond its jurisdiction in deciding the case, (2) the Commission's finding that the accident occurred within the course and scope of the parties' employment was clearly erroneous, and (3) the Commission's extension of an employer's tort immunity under Arkansas Code Annotated section 11-9-105 (Repl. 2012) to a negligent co-employee is in contravention of article 5 section 32 of the Arkansas Constitution. We affirm.

The pertinent facts are not disputed. Curtis and Lemna were employees of Henkel of America (d/b/a Dial Corporation), located in Scottsdale, Arizona. The two were roughly equal in the corporate hierarchy—Curtis worked in the finance division of the sales department and Lemna worked in operations. Their offices were in close proximity to each other, and the men had known each other for several years.

Marc Mollere, the team leader for Dial's field office in northwest Arkansas, planned a sales meeting for August 8, 2007, at the Pinnacle Country Club. Mollere's office served Wal-Mart and Sam's Club, two of Dial's biggest customers. After Curtis suffered an injury while a passenger in a golf cart operated by Lemna during a game at the sales meeting, Dial and its workers' compensation carrier, Zurich American Insurance Company, accepted the injury suffered by Curtis on August 8, 2007, to be compensable under the Arizona Workers' Compensation Act. Arizona Act compensation benefits were paid to Curtis pursuant to the Arizona Act.

Curtis did not make a claim for workers' compensation benefits under the Arkansas Workers' Compensation Act, and he did not seek damages from Dial Corporation or Zurich American Insurance Company. However, on September 10, 2008, Curtis filed a tort action in the Benton County Circuit Court against Lemna and Pinnacle Country Club alleging that Lemna's negligence was the proximate cause of the accident and Curtis's resulting injury. Lemna filed a motion to dismiss, alleging that he and Curtis were co-employees at the time of the accident and that the Arkansas Workers' Compensation Commission had exclusive

 

jurisdiction to determine whether Lemna was entitled to tort immunity pursuant to Arkansas Code Annotated section 11-9-105 (Repl. 2012).

In its November 23, 2010 order, the circuit court dismissed the case (without prejudice) for lack of jurisdiction until the issues reserved to the Arkansas Workers' Compensation Commission could be resolved. Curtis then requested a hearing before the Commission. He stipulated to most of the facts and agreed to litigate (1) the application (if any) of the Arkansas Workers' Compensation Act; (2) whether Curtis and Lemna were acting in the course and scope of their employment on August 8, 2007; (3) whether Lemna can claim immunity under the Arkansas Workers' Compensation Act; and (4) whether an employer's tort immunity under Arkansas Code Annotated section 11-9-105 can be extended to a co-employee consistent with the limitations of article 5, section 32, of the Arkansas Constitution.

The evidence at the hearing consisted of testimony (mostly by deposition) of various employees, including Mark Mollere, who was employed in August 2007, by Dial in its northwest Arkansas office as the vice-president of sales. He also served as the team leader of Dial's sales to Wal-Mart and Sam's. Mollere testified that he scheduled a meeting at Pinnacle Country Club on August 8, 2007. The purpose of the meeting was for Dial to review its business operations, including its financials, sales opportunities, and sales plans. According to Mollere's deposition testimony, these sales constituted over a third of Dial's business so it was necessary for employees from Dial's corporate headquarters to attend the meeting, including Curtis and Lemna (although they were based in Scottsdale, Arizona).

Mollere further testified that he was responsible for setting up the details of the meeting, which was held in the board room of the Pinnacle Country Club. He acknowledged that he arranged for food to be served at lunch and for the meeting participants to play golf that afternoon. Mollere paid (with a company credit card) for the meeting facility, golf fees, clubs, and carts. He testified that the golf outing was a team-building exercise that benefitted Dial and that he aimed to create a relaxed environment for the "free flow of thoughts and ideas." He further testified that when he arranged the golfing groups, he mixed those who "did not normally have access to corporate employees together with corporate employees" in order to exchange dialogue.

Also testifying by deposition was Curtis, who stated that he worked in Dial's finance department in Scottsdale, Arizona, and that his primary job duties were to work with sales organizations in terms of pricing, promotion, and customer profitability analysis. Curtis testified that he arrived at the meeting on August 8, 2007, in time for his particular presentation. Thereafter, he ate lunch with the remainder of the participants and then played golf. Curtis testified that Mollere arranged for club rental and the golf cart. Curtis stated that he considered his participation in the golf outing to be a matter of pleasure as opposed to it being work for Dial. Curtis also acknowledged that he had received workers' compensation benefits for his injury in Arizona.

Lemna also testified via deposition, stating that in August 2007, he worked for Dial and was based in Scottsdale, Arizona, as the director of "channel development." Lemna testified that on August 8, 2007, he and Curtis were sent by Dial to Northwest Arkansas for

4

a meeting with Dial's "Wal-Mart team" and that on the morning of August 8, 2007, he and Curtis attended the meeting at the Pinnacle Country Club, ate lunch, and then played golf. Lemna testified that he thought that the golf outing was mandatory because it was included as part of the meeting agenda. According to Lemna, he and Curtis were assigned to the same golf cart, and they took turns driving the cart, depending on who was making a shot.

Specific to this appeal, Lemna testified that on the tee shot at #6, both he and Curtis hit shots that "went to the right, almost in the fairway of an adjacent hole." In order to recover their stray golf balls, they drove their cart across a bridge. After hitting their second shots and subsequently finishing the hole, they returned to their cart. Lemna testified that in an attempt to avoid driving on the green, he took a wider route around the green and this resulted in him driving the cart over a retaining wall. Lemna stated that the wall could not be seen from his vantage point, and by the time they saw the retaining wall, it was too late to stop the golf cart. According to Lemna, both he and Curtis were thrown out of the cart upon impact. Lemna testified that when asked if they were "okay," Curtis replied that his shoulder did not feel right. Based on Curtis's complaint of pain, an ambulance was called to the scene, and Curtis was taken to the hospital where he underwent surgery. The record reflects that Curtis underwent an additional surgical procedure upon his return to Arizona.

Our review of this case on appeal is limited to the question of whether the Commission's decisions concerning the jurisdiction, the application, and the immunity provided by the Arkansas Workers' Compensation Act are supported by substantial evidence. *Honeysuckle v. Curtis H. Stout, Inc.*, 2010 Ark. 328, 368 S.W.3d 64. In so doing, we view all

evidence in the light most favorable to the Commission's decisions and reverse only if substantial evidence does not support the Commission's determination. *Id*. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. Further, if a fair-minded person could reach the same conclusions as the Commission, our standard of review requires us to affirm. *Id*.

First we consider the jurisdiction of the Arkansas Workers' Compensation Act. To the extent that Curtis argues on appeal that Arkansas lacks jurisdiction or that application of Arkansas workers' compensation law is not proper, it should be noted that Curtis filed a tort claim in Arkansas and specifically requested a hearing before the Commission. Therefore, Curtis stipulated that Arkansas had jurisdiction and that the application of Arkansas workers' compensation law was appropriate. Furthermore, based on our supreme court's holding in *Williams v. Johnson Custom Homes*, 374 Ark. 457, 288 S.W.3d 607 (2008), because Curtis could seek benefits under Arkansas workers' compensation law if he so chose, the Commission had a legitimate interest in the injury, and correspondingly had the right to apply Arkansas's law simultaneously or successively with Arizona's. *Id*.

Additionally, when a party to a tort claim in Arkansas raises a question of whether a person enjoys immunity as an employer under the Workers' Compensation Act, the Commission must first determine that issue. *Miller v. Enders*, 2013 Ark. 23, ___ S.W.3d ___. Accordingly, we are satisfied that the Commission appropriately answered the questions relating to applicability of the Act and its co-employee immunity provision to the case before us and that the Commission's holdings were squarely within its jurisdictional bounds.

Next, we consider whether there is substantial evidence to support the Commission's decision that Curtis and Lemna were acting within the course and scope of their employment on August 8, 2007. In order for an accidental injury to be compensable, it must arise "out of and in the course of employment." Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2012). A compensable injury does not include injuries "inflicted upon the employee at a time when employment services were not being performed." Ark. Code Ann. §11-9-102(4)(B)(iii). The same test is used to determine whether an employee was performing employment services as is used when determining whether an employee was acting within the course and scope of employment. *Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002). The paramount question is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest either directly or indirectly. *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999).

Although participation in the golf outing was not mandatory, the activity was provided by Dial Corporation, at Dial's expense. According to the testimony of Mollere, the purpose of the golf outing was a "team-building exercise" that ultimately benefitted Dial. In reaching its decision, the Commission found Mollere to be credible and relied on his testimony "that he wanted a relaxed environment for free flow of thoughts and ideas" and that he "specifically paired groups in an effort to mix employees from Dial's northwest Arkansas office with employees from the Scottsdale office in order to create a dialogue." Based on this testimony, the Commission determined that the golfing activity occurred

during the space and bounds of employment and that "Curtis and Lemna were carrying out Dial's purpose or advancing Dial's purpose directly or indirectly." After reviewing the evidence in the light most favorable to the Commission's decision, we are satisfied that the decision is supported by substantial evidence and should be affirmed. Furthermore, on this point, we note that Curtis is attempting to have his cake and eat it too. The fact remains that he has received workers' compensation benefits in Arizona, which is contrary to his current position that he and Lemna were simply participating in a voluntary event—not acting in the course and scope of their employment at the time of his injury.

Curtis also contends that the golf cart did not constitute a place of employment. However, we have determined previously that the definition of a work place is not static in the sense that it is limited to an employer's physical premises or an actual place of business. *See Rea v. Fletcher*, 39 Ark. App. 9, 832 S.W.2d 513 (1992). Instead, work places have been recognized as including activity that takes place in a motor vehicle and even roadside. *Brown v. Finney*, 326 Ark. 691, 932 S.W.2d 769 (1996); *Barnes v. Wilkiewicz*, 301 Ark. 175, 783 S.W.2d 36 (1990). Here, although Curtis and Lemna were in a golf cart at the time of the injury, the Commission concluded that they were "nevertheless acting within the course and scope of their employment at the time of the injury." The fact that the golf cart was not a physical business location or Dial's normal place of business is of no consequence. Because there is substantial evidence to support the Commission's conclusion, we affirm on this point as well.

Curtis also argues that the extension of the doctrine of immunity to actions in tort to co-employees is a violation of article 5, section 32 of the Arkansas Constitution as amended by amendment 26. However, this issue is now moot based on our supreme court's January 21, 2013 opinion, *Miller v. Enders*, 2013 Ark. 23, ___ S.W.3d ___. But the question remains whether Lemna is eligible for the tort immunity. The Commission concluded that although Lemna was not acting in a supervisory role at the time of the golf-cart accident, he was acting as an arm of his employer by fulfilling the employer's duties to transport its employee and thus was entitled to the employer's immunity.

Immunity from a tort action is only extended to supervisors or co-employees if, at the time of the accident, they are "fulfilling the employer's duty to provide a safe place to work" and are essentially acting as "an arm of the employer." *Id*. at 8, ___ S.W.3d at ___. In such cases, because the employer is immune from suit in tort, a co-employee who is acting on behalf of the employer by providing a safe place to work is entitled to that same immunity. *Id*., ___ S.W.3d at ___. The determination of whether the Commission correctly concluded that Lemna was fulfilling Dial's duty to provide a safe place to work is the most difficult facet of the case because it involves a question of statutory construction, which we review de novo. *McLane So., Inc. v. Davis*, 366 Ark. 164, 167, 233 S.W.3d 674, 677 (2006).

In considering whether employer immunity can be extended to Lemna under Arkansas workers' compensation law, we are guided by the *Miller* opinion, where our supreme court provided a thorough discussion of the progression of tort immunity for co-employees. *Miller,* 2013 Ark. 23, ___ S.W.3d ___. In *Miller*, our supreme court stated that all cases interpreting

9

Arkansas's workers' compensation statutes have become part of the statutes themselves, short of legislative amendment. The court further instructed that it

> has consistently interpreted Ark. Code Ann. § 11-9-105 to extend immunity to co-employees, such as Enders, for actions arising from the alleged failure to provide a safe workplace because those employees are charged with the employer's nondelegable duty of providing a safe workplace . . . . We have consistently afforded immunity to co-employees that are acting as an arm of the employer. This extension does not limit recovery; it cloaks certain co-employees in limited fact scenarios with immunity as an employer when they are fulfilling their employer's duties to provide a safe work place.

*Id.* at 8, ___ S.W.3d at ___. The supreme court in *Miller* left all prior case law intact, and it provided further explanation of the distinction between co-employees who are fulfilling an employer's responsibility to provide a safe place to work and employees who are simply carrying out a separate individual duty. In developing this distinction and ultimate extension of co-employee immunity, the court relied on the precedential history of employer, supervisor, and co-employee tort immunity.

In *King v. Cardin*, King was driving a dump truck, which backed over a fellow employee named Dyer, killing him. 229 Ark. 929, 319 S.W.2d 214 (1959). Dyer's estate sued King as a third-party tortfeasor alleging that King was negligent in his operation of the truck. *Id.* at 930–31, 319 S.W.2d at 216–18. The supreme court held that King was not immune, noting that the co-employee was not fulfilling the employer's responsibility to provide a safe work place; rather, he was merely attempting to carry out his separate, individual duty as an employee to drive the dump truck used in asphalt operations. *Id.*, 229 Ark. at 931–32, 319 S.W.2d at 216–17.

SLIP OPINION

In *Simmons First National Bank v. Thompson*, our supreme court held that because an employer is immune from tort action for a negligent failure to provide employees with a safe place to work, that same immunity also protected supervisory employees when their duties involved overseeing and discharging the responsibility of providing a safe place to work. 285 Ark. 275, 686 S.W.2d 415 (1985). This immunity was extended to nonsupervisory employees in *Allen v. Kizer*, 294 Ark. 1, 740 S.W.2d 137 (1987).

In *Barnes v. Wilkiewicz*, the employee filed a tort action against his supervisor for injuries he sustained when they were working on a company truck that had stalled along a road. 301 Ark. 175, 783 S.W.2d 36 (1990). The employee alleged that his supervisor had negligently parked the truck partly in the roadway and that the negligence was the proximate cause of his injuries that occurred when another motorist struck the parked vehicle. *Id.* at 177–78, 783 S.W.2d at 37. Our supreme court held that the supervisor was immune from suit because the employee's claim amounted to one of failure to provide a safe work place and that the employee was injured during and within the course and scope of his employment because the accident scene was the workplace as the job required repair of a stalled company truck, which was within a supervisory capacity. *Id.* at 178–79, 783 S.W.2d at 37–39.

In *Rea v. Fletcher*, 39 Ark. App. 9, 832 S.W.2d 513 (1992), Rea filed a tort action against Fletcher, a co-employee, alleging that Fletcher negligently operated a vehicle in which Rea was riding. *Id.* at 10, 832 S.W.2d at 514. In *Rea*, the employer provided transportation from a designated parking lot to the work site and back during lunch and after

11

work. *Id*. at 10–11, 832 S.W.2d at 514. On the day of the accident, Fletcher's supervisor asked him to bring his own truck to the work site for the purpose of transporting employees back and forth for lunch because company trucks were not available. *Id*. at 11–12, 832 S.W.2d at 514–15. While riding in Fletcher's truck, Rea fell out of the back of the truck and sustained a spinal injury. *Id*. at 12, 832 S.W.2d at 514–15. We affirmed the trial court's summary judgment in favor of Fletcher and stated that assuming arguendo that Fletcher had negligently operated his private vehicle, he was immune from suit because providing transportation from the employer-designated parking area to the job site involved a duty to provide a safe place to work. *Id*. at 13, 832 S.W.2d at 514–15.

Our supreme court confirmed this line of reasoning in *Brown v. Finney*. 326 Ark. 691, 932 S.W.2d 769 (1996). Brown and Finney worked for ConAgra as part-time employees. *Id*. at 693, 932 S.W.2d at 770. Neither Brown nor Finney had supervisory duties within the company, and they were transported in a company van to their respective job sites. *Id*. at 693–94, 932 S.W.2d at 770–71. While on their way from one work site to another, the van driven by Finney overturned and Brown was injured. *Id*., 932 S.W.2d at 770–71. He sued Finney in tort. *Id*. at 694–95, 932 S.W.2d at 771. On appeal, it was determined that it was ConAgra's duty to provide its employees with a safe place to work and that the duty could not be delegated to its employees—supervisory or otherwise—and that while driving the company van Finney was acting "as an arm of the employer." *Id*. at 697–99, 932 S.W.2d at 774.

Relying on both *Rea* and *Brown*, cases where a co-employee was performing the employer's duty to provide a safe place to work for employees while operating a vehicle, the Commission concluded that when Lemna was driving the golf cart in the course and scope of his employment, he was fulfilling Dial's duty to provide a safe place to work for Curtis. After a careful review of the evidence and the development of co-employee immunity law in Arkansas, we affirm the decision of the Commission because there is substantial evidence to support its conclusion on this question. Once the Commission correctly determined that the golf outing was within the workplace bounds, it was logical to conclude that the employer had a duty—a non-delegable duty—to provide a safe place to work. In this case, Lemna was engaged as an "arm of the employer" when he provided transportation within the workplace environment (as was Curtis when taking his turn driving the golf cart).

We also note that the Commission's resolution of the co-employee immunity question in this case supports the exclusive-remedy provision of our workers' compensation law, which favors both the employer and the employee. *Hickey v. Gardisser*, 2010 Ark. App. 464, at 7, 375 S.W.3d 733, 737 (noting that courts are to take a narrow view of any attempt to seek damages beyond that favored, exclusive remedy of workers' compensation benefits). Based on the facts of this case, we are satisfied that the Commission's resolution of Curtis's claim is logically, statutorily, and constitutionally sound. We also conclude that the evidence presented at the hearing, when considered in the light most favorable to the Commission's decision, is sufficiently substantial. As such, the decision of the Commission is affirmed in all respects.

SLIP OPINION

Affirmed.

PITTMAN, GRUBER, GLOVER, and BROWN, JJ., agree.

WYNNE, and WHITEAKER, JJ., concur in part; dissent in part.

HIXSON, and WOOD, JJ., dissent.

**PHILLIP T. WHITEAKER, Judge, concurring in part and dissenting in part.** I agree with the majority opinion's conclusions that the Arkansas Workers' Compensation Commission correctly exercised its jurisdiction, that appellant William Curtis was injured within the course and scope of his employment, and that the supreme court's decision in *Miller v. Enders*, 2013 Ark. 23, ___ S.W.3d ___, renders moot Curtis's argument concerning the constitutionality of co-employee immunity. I must respectfully dissent, however, from the majority's conclusion that appellee Michael Lemna is entitled to immunity from Curtis's tort action.

Arkansas Code Annotated section 11-9-105 (Repl. 2012) provides immunity to an employer from tort actions for injuries arising out of employment. In *Neal v. Oliver*, 246 Ark. 377, 438 S.W.2d 313 (1969), the supreme court held that the duty to provide a safe place to work is that of the employer and cannot be delegated to an employee. The court has extended employer immunity and expanded the duty to provide a safe work place to employees in two fact-specific situations. First, immunity has been extended for negligent failure to provide a safe work place to supervisory employees when their general duties involve the overseeing and discharge of a safe work place on behalf of the employer. *See Simmons First Nat'l Bank v. Thompson*, 285 Ark. 275, 686 S.W.2d 415 (1985). Second,

14

immunity has been extended for negligent failure to provide a safe work place to non-supervisory employees when the employee's duties involved the duty to provide a safe work place. *See Allen v. Kizer*, 294 Ark. 1, 6, 740 S.W.2d 137, 140 (1987).

Both of these exceptions are fact-driven; that is, whether an employee maintains a supervisory status and whether the duties of the supervisory position involve overseeing and discharging a safe work place depends on the facts of the case. Similarly, whether a non-supervisory employee's job description involves a duty to provide a safe work place is dependent on the facts. For example, in *Allen*, a worker died by electrocution from the employer's machinery. Jones, the non-supervisory employee, was a maintenance employee. His job duties were to check and repair the electrical equipment, including the equipment that caused the death. Under those facts, the supreme court held that Jones was acting on behalf of the employer to provide a safe work place and extended immunity to him.

In *Rea v. Fletcher*, 39 Ark. App. 9, 832 S.W.2d 513 (1992), Rea and Fletcher were both employed at a construction site. The employer instructed the employees to park off-site, and the employer provided a shuttle to the construction site. On the day of the injury, the employer instructed Fletcher to use his personal vehicle to transport employees to the job site. Rea fell out of the back of Fletcher's vehicle and was injured. Given these facts, the supreme court determined that Fletcher, in providing the shuttle, was acting on behalf of the employer to provide a safe work place and extended immunity to him.

Most recently, in *Miller v. Enders*, *supra*, the supreme court held that immunity will be extended to a non-supervisory co-employee where the co-employee is charged with the

15

employer's duty to provide a safe workplace. There, Enders was the pilot of an air–ambulance helicopter. The helicopter crashed as he was piloting it, and Miller, the flight nurse, and Bratt, an EMT, were injured in the crash. The supreme court held that the record demonstrated that Enders was a co-employee charged with the employer's duty to provide a safe workplace: "Enders's sole responsibility was to operate the workplace, a roving helicopter, in a safe manner and to safely transport patients. . . . Further, as the pilot-in-command, Enders was delegated the authority concerning matters of flight safety and aircraft operation." *Miller*, 2013 Ark. 23, at 7–8, ___ S.W.3d ___, ___. Because Enders had been specifically charged with the employer's nondelegable duty of providing a safe workplace, the supreme court held that Enders was entitled to immunity.

As noted by the majority opinion, the supreme court in *Miller* held that co-employee immunity "cloaks certain co-employees *in limited fact scenarios* with immunity as an employer when they are fulfilling their employer's duties to provide a safe work place." *Miller*, 2013 Ark. 23, at 13, ___ S.W.3d at ___ (emphasis added). I dissent from the majority opinion because I do not believe, under the specific facts of this case, that the employer's immunity should be extended to Lemna. Lemna and Curtis were nothing more than co-employees. Neither had supervisory capacity over the other, so the first exception, set forth in *Simmons*, *supra*, does not apply. Moreover, while Curtis and Lemna were engaged in an employer-sponsored event, nothing about Lemna's participation in the event related directly to providing a safe work place. Therefore, the second exception found in *Allen*, *supra*, does not apply either. Finally, participation in the golf outing was not a specific duty of Lemna's

position with the employer; as such, unlike *Rea* and *Miller*, there was no direct command or sole responsibility devolved from the employer onto Lemna to take any kind of specific action pertaining to the event.

Based on the facts of this case, I would not find that Lemna was charged with the responsibility of fulfilling Dial's duty to provide a safe work place to Curtis, and I would reverse the Commission's conclusion that Lemna was entitled to his employer's immunity.

WYNNE, J., joins in this opinion.

**KENNETH S. HIXSON, Judge, dissenting.** I respectfully dissent because there is no substantial evidence to support a finding that Curtis and Lemna were providing employment services when Curtis was injured in the golf cart. Injuries that occur during recreational or social activities for the employee's personal pleasure are not compensable. Ark. Code Ann. § 11-9-102(4)(B)(ii). And, injuries that occur when an employee is not providing employment services are not compensable. Ark. Code Ann. § 11-9-102(4)(B)(iii). Whether one is providing employment services must be determined within the context of individual cases, employments, and working relationships, not generalizations made devoid of practical working conditions. *Engle v. Thompson Murray, Inc.*, 96 Ark. App. 200, 239 S.W.3d 561 (2006) (recreational activity was deemed employment services where retreat was mandatory and injured employee was in charge of retreat activities). Recreational or social activities are within the course and scope of employment when the employer, by expressly or impliedly requiring participation, brings the activity within the orbit of the employment. Arthur

17

Larson, *Larson's Workers' Compensation Law*, § 22.01. Dial's representative agreed in his testimony that "this was a golf outing made available to them if they wanted to participate," and that he asked meeting attendees in advance whether they planned to participate, in order to make arrangements. The record was clear that some of the meeting attendees did not participate in the recreational golf outing. The employer expressly *did not* require participation, and there was no evidence that any "free flow of ideas" or "team building" occurred among corporate and other Dial employees on the golf course. Simply put, this was an optional golf outing for pure recreation, generously paid for by Dial. Payment for recreation alone does not constitute substantial evidence of employment services within the meaning of the Workers' Compensation Act.

Further, assuming arguendo, that I would find the injury occurred during the scope of employment, there is no substantial evidence to support a finding that appellee Michael Lemna was entitled to immunity from tort. This cloak of immunity is to be given to a co-employee under limited fact scenarios when that co-employee is charged with, and fulfilling, the employer's duty to provide a safe place to work. *Miller v. Enders*, 2013 Ark. 23, ___ S.W.3d ___; *King v. Cardin*, 229 Ark. 929, 319 S.W.2d 214 (1959). Something more than just being present on the "job" is required to place Lemna in the shoes of his employer for purposes of tort immunity. Lemna was not "charged with" transporting Curtis around the golf course.

WOOD, J., joins in this dissent.

*Blair & Stroud*, by: *H. David Blair* and *Barrett S. Moore*, for appellant.
*Smith, Williams & Meeks, LLP*, by: *Charles H. Crocker, Jr.*, for appellee.