# Dorothy BRADLEY *v.* Lindell HOUSTON

CA 83-420             676 S.W.2d 746

Court of Appeals of Arkansas
Division II
Opinion delivered October 10, 1984

*Mark Woodville*, for appellant.

*Kinney, Easley & Kinney*, by: *B. Michael Easley*, for appellee.

H. WILLIAM ALLEN, Special Judge. This appeal arises from a paternity action that appellant filed against appellee in 1979. The County Court of St. Francis County found the appellee, Lindell Houston, to be the father of Keenan Bradley. Houston appealed that judgment to the circuit court. Following a motion by appellant, Dorothy Bradley, to require a blood test, on February 10, 1982, the circuit court ordered the appellant, Bradley, the appellee, Houston, and Keenan Bradley to undergo blood tests pursuant to statute. Ark. Stat. Ann. § 34-705.1 (Supp. 1983). A jury trial was held in St. Francis County on May 11, 1983; the jury found Houston not to be the father of Keenan Bradley. In appealing that verdict, appellant alleges the trial court committed two reversible errors below. She contends the court erred (1) in limiting appellant's examination of Dr. Jerry L. Morrisey, the expert witness who performed the blood test analysis, and (2) in permitting appellee's expert witness, Steve Murray, to testify. For the reasons set out herein, we affirm the jury's verdict.

A brief recitation of what occurred procedurally prior to and during trial is necessary to an understanding of this appeal. In 1979, after appellant had filed her paternity action, each party filed answers to the other's interrogatories, which included questions requesting the names of all witnesses to be called at trial, including expert witnesses. Neither party listed the names of the two experts who actually testified.

On the day of the trial, counsel for the appellee

objected in chambers to the appellant's calling Dr. Morrisey, a chemist, to testify about results of the court-ordered blood tests. Appellee's attorney contended that appellant was in violation of Rule 26(e) of the Arkansas Rules of Civil Procedure because she had not identified Dr. Morrisey as an expert witness in her answers to appellee's interrogatories filed nearly four years before. Appellee's counsel stated that he was given a copy of the blood test results on May 6, 1983, only five days before trial, but acknowledged that appellant's counsel had informed him by telephone of those results on April 25, 1983.

The trial court ruled that the test results were admissible and that Dr. Morrisey would be permitted to testify but that his testimony would be restricted to the contents of the test results which had been provided to appellee's counsel. The court ruled further that it would permit appellant to elicit testimony concerning Dr. Morrisey's educational background and qualifications. Counsel for appellant objected to the trial court's limiting the scope of Dr. Morrisey's testimony at all and stated, "If allowed to testify, our expert would proffer testimony as to how the test was developed, its acceptability in the scientific community and the reliability of the test."

Dr. Morrisey testified, subject to some limitations upon appellee's objections. His testimony included his finding that the probability of appellee's being the father of Keenan Bradley was 95.83%, a "reasonable scientific certainty." On cross-examination, appellee's counsel attempted to pose the following hypothetical to Dr. Morrisey:

> Doctor, for the purpose of this question I want you to assume that there are 6,000 black males of fertile age in St. Francis County. Now, I want you, please, sir, to take the difference between 100% and 95.83%, which is your paternity index in this case. That would be . . . 4.17% . . . . Would you take 4.17% of 6,000 and tell the jury what that figure is?

Counsel for appellant objected to the hypothetical

because no proof had been introduced to support the number of black males in St. Francis County. The trial court ruled that no foundation existed for the hypothetical. Later that day, and over appellant's objection, appellee called Steve Murray, Director of Admissions and Registrar at East Arkansas Community College, to provide the figure of adult black male population in St. Francis County. Murray testified to the 1970 census figure. The basis of appellant's objection to Murray's testimony was that Murray's name had not been listed as an expert witness in appellee's answers to appellant's interrogatories in compliance with Rule of Civil Procedure 26(e).

Thus, both of appellant's points for reversal are based upon Rule 26(e). Rule 26(e) provides, in pertinent part;

> Supplementation of Responses. A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

> (1) A party is under duty seasonably to supplement his response with respect to any question directly addressed to. . .(B) the identity and location of each person expected to be called as a witness at trial, and in the case of expert witnesses, the subject matter on which he is expected to testify, and the substance of his testimony.

Ark. R. Civ. P. 26(e) (Repl. 1979).

We do not believe this rule is applicable to this situation because (1) Dr. Morrisey's report and the likelihood that he would appear as a witness were not a surprise to appellee's counsel, who, in any event, had sufficient time before trial to seek a continuance on the basis of surprise, and (2) Dr. Morrisey was technically the court's witness, pursuant to Ark. Stat. Ann. § 34-705.1, and could not reasonably be expected to be on a listing of appellant's witnesses. Ark. Stat. Ann. § 34-705.1 (Supp. 1983) provides in pertinent part as follows:

Whenever it shall be relevant to the prosecution or the defense in an illegitimacy action, the trial court may direct that the defendant, complainant and child submit to one (1) or more blood tests or other scientific examinations or tests, to determine whether or not the defendant can be excluded as being the father of the child, and to establish the probability of paternity if the test does not exclude the father (defendant). *The results of the tests shall be receivable in evidence.* The tests shall be made by a duly qualified person, or persons, not to exceed three (3), to be appointed by the court . . . . *Such experts shall be subject to cross-examination by both parties after the court has caused them to disclose their findings.* (Emphasis supplied).

Thus, the trial court properly permitted Dr. Morrisey to testify. The more difficult question is whether prejudicial error occurred by the trial court's limitation of the scope of appellant's examination of Dr. Morrisey. Given the language previously quoted, it appears that a wide latitude of examination by all parties was intended by the statute. Further, we are not unmindful of our rule that error is presumed to be prejudicial unless it is demonstrated to be otherwise or is manifestly not prejudicial. *Chappell Chevrolet, Inc.* v. *Strickland,* 4 Ark. App. 108, 628 S.W.2d 25 (1982). However, we have concluded that in this instance any error by the trial court in restricting Dr. Morrisey's testimony was not prejudicial for the following reasons: (1) the latitude of the examination that did occur, and (2) the fact that there was no challenge by the appellee at trial to the authenticity of the test, its acceptability in the scientific community or its reliability.

(1) *The testimony presented gave substantial validity to the test results.*

Appellant was able to elicit the following from Dr. Morrisey: He has a Ph.D in chemistry and has done post-doctorate work in genetic defects in children. His training in performing medical laboratory tests was at a school of medicine. He has been employed for three years at Roche

Bio-Medical Reference Laboratories in Gibsonville, North Carolina, which performs laboratory medical tests for paternity evaluation. He has previously testified in ten or eleven other cases as an expert in interpreting paternity evaluations. Over the past two years, he has attended lectures and seminars and has read the scientific literature concerning paternity evaluation.

Dr. Morrisey also testified in detail regarding how the two separate tests on the paternity evaluation report were conducted and on the basis for his conclusion that he was 95.83% certain that the appellee was the father of appellant's son. He testified that one of the testing procedures utilized "has been used extensively in paternity evaluations over the past few years in different parts of the country." The report itself, admitted into evidence as an exhibit, prominently reflects, "Probability of Paternity— 95.83%" as to appellee, and the report is an affidavit form signed not only by Dr. Morrisey as Assistant Director but also by James W. Geyer, Ph.D., Director, Department of Paternity Evaluation, Bio-Medical Reference Laboratories, Inc.

(2) *The reliability of the test results was not contested by appellee.*

Appellee's defense to the paternity claim did not challenge Dr. Morrisey's finding or conclusions but, instead, focused on the margin of error recognized by the test results. Appellee asserted that because the test was not 100% certain, the true father could have fallen within the 4.17% margin of error.

Accordingly, in the circumstances of this case, where extensive testimony concerning the qualifications of the witness, the methodology of the testing and some evidence regarding its acceptability nationwide were presented, plus the fact that the credibility of the test results was not put to the issue, we cannot find prejudice to the appellant by the trial court's ruling. In the absence of prejudice, there was no reversible error. *King* v. *Cardin*, 229 Ark. 929, 319 S.W.2d 214 (1959).

Appellant's second point is that the trial court erred in permitting Steve Murray, the college registrar, to give the black male population statistics in St. Francis County based upon the 1970 United States Census because appellee failed to supplement his witness list in compliance with Rule 26(e). Since no issue of relevancy was raised, there was no error in allowing the testimony which amounted to no more than the extraction of public census information. Even without the presence of a witness, the court could have taken judicial notice of this information under Unif. R. Evid. 201, or admitted it as the contents of a public record, Unif. R. Evid. 1005. The court did not abuse its discretion in permitting introduction of this readily accessible information, even though no advance notice of this "expert" witness through which the information was submitted was provided to appellant.

Although we agree with appellant that the trial court erred in limiting Dr. Morrisey's testimony based upon Rule 26(e), we cannot say that appellant demonstrated that prejudice occurred because of that error. We also find no abuse of discretion in the court's admitting testimony limited to 1970 census statistics through a witness not provided in advance under Rule 26(e). This holding is based upon the unusual factual and procedural circumstances in this case and is not intended to serve as a basis for relaxing the requirements of Rule 26(e).

Affirmed.

CRACRAFT, C.J., and CLONINGER, J., agree.