SLIP OPINION  Cite as 2014 Ark. 377

# SUPREME COURT OF ARKANSAS

No. CV–13–1048

| | |
|---|---|
| WILLIAM CURTIS<br>　　　　　　　　　　APPELLANT | **Opinion Delivered** September 18, 2014 |
| V. | APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NO. G101427] |
| MICHAEL LEMNA and NEW<br>CHAMPIONS GOLF & COUNTRY<br>CLUB<br>　　　　　　　　　　APPELLEES | AFFIRMED; COURT OF APPEALS'<br>OPINION VACATED. |

**KAREN R. BAKER, Associate Justice**

This appeal is before us on petition for review from the Arkansas Court of Appeals; therefore, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1–2(e) (2013).

The case arises from a golf-cart accident that occurred on August 8, 2007, at the Pinnacle Country Club in Benton County, Arkansas owned and operated by New Champions Golf & Country Club in Benton County, Arkansas. Appellant, William Curtis, and appellee, Michael Lemna, were both employees of Henkel of America (d/b/a/ Dial Corporation) headquartered in Scottsdale, Arizona, at the time of the accident. The two were similarly situated in the corporate hierarchy. Curtis was employed as the director of the channel global development team in the operations department. Lemna was employed in the finance department in sales operations. At the Scottsdale headquarters, their offices were approximately thirty to forty feet from each other, and they had known each other for five to seven years. However, it is undisputed that neither was the other person's supervisor.

Dial's northwest Arkansas office served roughly thirty-five percent of Dial's customers, including two of its largest customers, Wal-Mart and Sam's Club. In August 2007, Marc Mollere, the team leader for Dial's northwest Arkansas field office, planned a sales meeting for August 8, 2007, at the Pinnacle Country Club where individuals from Dial's headquarters were brought in to meet with Dial's local team in northwest Arkansas regarding the Wal-Mart account. Curtis and Lemna traveled to northwest Arkansas to the Dial sales meeting event to meet with the Wal-Mart team. On August 8, 2007, the day of the accident, the two attended the sales meeting. During a game of golf scheduled as part of the sales meeting, Lemna accidentally drove the golf cart over a retaining wall near the sixth hole, and both men were ejected from the golf cart. Curtis suffered a shoulder injury in the golf-cart accident.

As a result of the accident and injury, Curtis filed a worker's compensation claim under the Arizona Workers' Compensation Act and received benefits from his employer and its insurer. Subsequently, on September 10, 2008, Curtis filed an "Amended and Substituted Complaint" in Benton County Circuit Court alleging that Lemna's negligence was the proximate cause of the accident resulting in Curtis's injury. Lemna responded with a motion to dismiss alleging that Curtis and Lemna were co-employees at the time of the accident and that the Arkansas Workers' Compensation Commission ("the Commission") maintained exclusive jurisdiction to determine whether Lemna was entitled to tort immunity pursuant to Ark. Code Ann. § 11-9-105 (Repl. 2012). On November 24, 2010, the Benton County Circuit Court granted Lemna's motion to dismiss and dismissed the case without prejudice for lack of jurisdiction until the issues could be addressed by the Commission.

SLIP OPINION

Subsequent to the circuit court's order, Curtis pursued a determination from the Commission. In a May 11, 2011 prehearing conference, the parties stipulated that Curtis was not making a claim for workers' compensation benefits under the Arkansas Workers' Compensation Act ("the Act"). Rather, Curtis sought determination of whether the Act was applicable, whether Curtis and Lemna were acting within their scope of employment on August 8, 2007, and whether Lemna was entitled to immunity. On July 14, 2011, the Administrative Law Judge ("ALJ") held a hearing. On August 8, 2011, citing Ark. Code Ann. § 11-9-410 (Repl. 2012), the ALJ found that at the time of the accident, Curtis and Lemna were acting within the scope of their employment, and Lemna was performing his employer's duty to provide a safe place to work for Curtis and was entitled to immunity pursuant to Ark. Code Ann. § 11-9-105. On November 21, 2011, the full commission adopted the ALJ's findings and affirmed the ALJ's determination.

Curtis appealed to the court of appeals, and on November 6, 2013, the court of appeals affirmed the Commission's decision. On February 13, 2014, we granted Curtis's petition for review. When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *Fowler v. State*, 339 Ark. 207, 5 S.W.3d 10 (1999).

Curtis presents three issues on appeal: (1) the Commission lacks jurisdiction over Curtis's action; (2) there is not substantial evidence to support the Commission's decision that Curtis and Lemna were acting within the scope of their employment and that co-employee immunity was extended to Lemna acting as the employer providing a safe work environment;

3

SLIP OPINION

and (3) the extension of employer immunity to co-employees in tort actions is unconstitutional in violation of article 5 section 32 as amended by amendment 26 to the Arkansas Constitution.

*Points on Appeal*

*Jurisdiction*

For his first point on appeal, Curtis asserts that the Commission erred in its decision because it lacked jurisdiction over his case, erroneously shifted the burden of proof to Curtis, refused to rule on the applicability of Arizona law, and erroneously applied the exclusivity provision of the Act. In sum, Curtis urges us to reverse the Commission's decision based on lack of jurisdiction.

First, we addressed a similar jurisdiction issue in *Miller v. Enders*, 2010 Ark. 92, at 1-3, (*Miller I)*, and explained,

> Subject-matter jurisdiction is an issue that can and, indeed must, be raised by this court sua sponte. *See Brock v. Townsell*, 2009 Ark. 224, 309 S.W.3d 179 (*citing Viravonga v. Samakitham*, 372 Ark. 562, 279 S.W.3d 44 (2008)). If the [lower court] lacked jurisdiction, this court lacks jurisdiction to hear the appeal. *See Brock, supra*; *Clark v. State*, 362 Ark. 545, 210 S.W.3d 61 (2005); *Koonce v. Mitchell*, 341 Ark. 716, 19 S.W.3d 603 (2000).

> Arkansas Code Annotated section 11-9-105 provides in relevant part:

> (a) The rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone otherwise entitled to recover damages from the employer. . . .

> This court has held that:

SLIP OPINION

[T]he exclusive remedy of an employee or her representative on account of injury or death arising out of and in the course of her employment is a claim for compensation under § 11-9-105, and that the commission has exclusive, original jurisdiction to determine the facts that establish jurisdiction, unless the facts are so one-sided that the issue is no longer one of fact but one of law, such as an intentional tort.

*VanWagoner v. Beverly Enters.*, 334 Ark. 12, 16, 970 S.W.2d 810, 812 (1998) (internal citations omitted). In adopting this rule, we have explained that the Commission has vast expertise in this area, and that the goals of uniformity, speed, and simplicity would best be achieved by granting the Commission the exclusive, original jurisdiction to determine the applicability of the Workers' Compensation Act. *See Carter v. Georgia-Pacific Resins, Inc.*, 368 Ark. 19, 242 S.W.3d 616 (2006) (*citing Johnson v. Union Pac. R. R.*, 352 Ark. 534, 541, 104 S.W.3d 745, 748 (2003).

Therefore, when a party to a lawsuit raises a question of whether a person enjoys immunity as an employer under the Workers' Compensation Act, the Commission must first decide the issue. *See McCarthy v. Pulaski County Circuit Court, Sixth Div.*, 366 Ark. 316, 235 S.W.3d 497 (2006) (*citing Moses v. Hanna's Candle Co.*, 366 Ark. 233, 234 S.W.3d 872 (2006); *Stocks v. Affiliated Foods Southwest, Inc.*, 363 Ark. 235, 213 S.W.3d 3 (2005)). In *McCarthy, supra*, an employee died of injuries he suffered in an airplane accident while returning home from a business trip. At the time of the accident, McCarthy, who had served as the pilot, was president of the company that employed the deceased. The wife of the deceased employee argued that McCarthy was a third person who did not enjoy immunity under the Workers' Compensation Act, and this court held that the Commission had exclusive, original jurisdiction to determine whether McCarthy was an employer under the circumstances presented in that case. *See id.*

Similar facts are presented here in Curtis's case. Curtis argues that Lemna, as a co-employee who drove the golf cart during the accident that occurred in Arkansas, is a third person who does not enjoy immunity under the Act.

We further note that Curtis could seek workers' compensation benefits under Arkansas law because his injury occurred while he was working in Arkansas and the Commission had a legitimate interest in the injury. *See Williams v. Johnson Custom Homes*, 374 Ark. 457, 461–62, 288 S.W.3d 607, 610 (2008) (internal citations omitted) ("[T]he law has been well

settled that all states having a legitimate interest in the injury have the right to apply their own diverse workers' compensation rules and standards, either separately, simultaneously, or successively. Claims for compensation benefits may be instituted in both states having jurisdiction of the claim. Of course, there can be no double recovery. The Full Faith and Credit Clause does not preclude successive workers' compensation awards, even if one statute or the other purports to confer an exclusive remedy on the claimant."). Accordingly, Curtis could file for benefits in both states because both Arizona and Arkansas maintained jurisdiction of the claim. However, the record demonstrates that Curtis stipulated that he was not seeking benefits in Arkansas; rather, he filed a tort action in the Benton County Circuit Court. In response to his lawsuit, Lemna filed a motion to dismiss asserting that the Commission had exclusive jurisdiction over the matter and that our exclusivity statute required Curtis to file his action with the Commission. The circuit court agreed and dismissed Curtis's action without prejudice.

Subsequent to the dismissal, although Curtis could have appealed the order of dismissal, he did not do so. Ark. R. App. P. – Civ. 2(a) (2013); *see also Rossi v. Rossi*, 319 Ark. 373, 374, 892 S.W.2d 246, 246 (1995) ("[T]he failure to file a timely notice of appeal deprives the appellate court of jurisdiction.") Rather, in his hearing brief, Curtis filed an action before the Commission and "commenced [the] proceeding for the purpose of an adjudication as to whether Ark. Code Ann. § 11-9-105 is applicable as an affirmative defense to his common law tort claim against Lemna." Further, Curtis stated "[a]lthough this question has relevance only to tort claims, the Arkansas Supreme Court has held that the Commission has exclusive

6

jurisdiction to adjudicate the applicability of this defense." On May 11, 2011, before the Commission, Curtis and Lemna both stipulated that the issues to be litigated were as follows: (1) application of the Workers' Compensation Act; (2) whether Curtis and Lemna were acting in the course and scope of their employment on August 8, 2007; (3) whether Lemna can claim immunity under the Act; and (4) whether an employer's tort immunity under Ark. Code Ann. § 11-9-105 can be extended to a co-employee consistent with the limitations of article 5, section 32, of the Arkansas Constitution.

In sum, Curtis sought relief through the Commission, did not prevail, and on appeal he asserts that Arkansas lacks jurisdiction and that the Commission erroneously applied the Act. However, Curtis filed a tort claim in Benton County, Arkansas, and then specifically requested a hearing before the Commission and requested that the Commission determine the applicability of our workers' compensation laws. Therefore, we hold that the Commission has exclusive, original jurisdiction to determine that issue and that jurisdiction is proper.

*Scope of Employment and Co-Employee Immunity*

*Scope of Employment*

For his second point on appeal, Curtis asserts that the Commission erred in finding that there was substantial evidence to support its decision that Curtis and Lemna were acting within the scope of their employment. Curtis also contends that the golf cart was not a work site and the two were golfing for pleasure and not to further Dial's interests. He further argues that the Commission erred by extending immunity to Lemna as a co-employee acting

7

as the employer with the duty of providing a safe environment. Stated differently, Curtis asserts that the Commission erred in finding that Lemna was not a third party for purposes of the tort claims.

The crux of Curtis's second point on appeal is that when Curtis's injury occurred, Curtis and Lemna were acting outside the scope of their employment. Accordingly, because the event was outside the scope of their employment, immunity cannot be extended to Lemna as an arm of the employer.

Lemna responds that we should affirm the Commission. The two men were acting within the scope of their employment because they were conducting business for Dial during the sales meeting and team-building event. Thus, Lemna contends that he is entitled to immunity from Curtis's suit in tort because he was providing a safe work place for Curtis when the accident occurred.

In reviewing workers' compensation claims, we view the evidence in the light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. *Crudup v. Regal Ware, Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000). "Substantial evidence exists if fair-minded persons could reach the same conclusion when considering the same facts." *Id*. at 809, 20 S.W.3d at 903. Further, "[t]he question of the correct application and interpretation of . . . statute is a question of law, which this court decides de novo." *Broussard v. St. Edward Mercy Health Sys., Inc.*, 2012 Ark. 14, at 3, 386 S.W.3d 385, 388.

At issue are Ark. Code Ann. sections 11-9-102(4)(A)(ii) and (B)(ii), and 11-9-105. Ark. Code Ann. Section 11-9-102(4)(A)(ii) provides:

"Compensable injury" means:

        (ii) An injury . . . arising out of and in the course of employment if it is not caused by a specific incident or is not identifiable by time and place of occurrence . . .

Subsection (B)(ii) provides that a "compensable injury" does not include:

(ii) Injury incurred while engaging in or performing or as the result of engaging in or performing any recreational or social activities for the employee's personal pleasure. . . .


Ark. Code Ann. § 11-9-105 provides in pertinent part:

        (a) The rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, shall be exclusive of all other rights and remedies of the employee, . . . to recover damages from the employer, or any principal, officer, director, stockholder, or partner acting in his or her capacity as an employer. . . . No role, capacity, or persona of any employer . . . other than that existing in the role of employer of the employee shall be relevant for consideration for purposes of this chapter, and the remedies and rights provided by this chapter shall in fact be exclusive regardless of the multiple roles, capacities, or personas the employer may be deemed to have.

In reviewing Ark. Code Ann. §§ 11-9-102 and 11-9-105, we construe the statutes so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible. *Miller v. Enders*, 2013 Ark. 23, at 6-7, 425 S.W.3d 723, 726–27 ("*Miller II*"). "When interpreting statutes, our review is de novo, as it is for this court to decide what a constitutional and statutory provision mean." *Ark. Hotels and Entm't, Inc. v. Martin*, 2012 Ark. 335, 423 S.W.3d 49. "In considering the meaning of a statute, we consider it just as it reads, giving the words their ordinary and usually accepted meaning." *Nelson v. Timberline Int'l, Inc.*, 332 Ark. 165, 176, 964 S.W.2d 357, 362 (1998). However, when we construe the workers' compensation statutes, we must strictly construe them. Ark.

Code Ann. § 11-9-704(c)(3) (Repl. 2012). *See Miller II.* "The doctrine of strict construction requires this court to use the plain meaning of the language employed." *Stewart v. Ark. Glass Container*, 2010 Ark. 198, at 6, 366 S.W.3d 358, 361–62.

We have previously examined these statutes with regard to activities that were within the scope of employment for purposes of a compensable injury and also examined the claims against co-employees and whether such employees were immune from suit as is at issue here. *See Miller II.*

First, with regard to whether the golf outing was within the scope of employment, "the test is whether the injury occurred within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly." *White v. Ga.-Pac. Corp.*, 339 Ark. 474, 478, 6 S.W.3d 98, 100 (internal citations omitted). In *Hudak-Lee v. Baxter County Regional Hospital*, 2011 Ark. 31, at 5-8, 378 S.W.3d 77, 80–81, we explained,

> A compensable injury does not include an injury that is inflicted upon the employee at a time when employment services are not being performed. Ark. Code Ann. § 11-9-102(4)(B)(iii) (Supp. 2009). The phrase 'in the course of employment' and the term 'employment services' are not defined in the Workers' Compensation Act. *Texarkana Sch. Dist. v. Conner*, 373 Ark. 372, 284 S.W.3d 57 (2008). Thus, it falls to the court to define these terms in a manner that neither broadens nor narrows the scope of the Act. *Id.*

> An employee is performing employment services when he or she is doing something that is generally required by his or her employer. *Id.*; *Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002). We use the same test to determine whether an employee is performing employment services as we do when determining whether an employee is acting within the course and scope of employment. *Jivan v. Econ. Inn & Suites*, 370 Ark. 414, 260 S.W.3d 281 (2007). The test is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's

interest, directly or indirectly. *Id*. . . . The critical inquiry is whether the interests of the employer were being directly or indirectly advanced by the employee at the time of the injury. Moreover, the issue of whether an employee was performing employment services within the course of employment depends on the particular facts and circumstances of each case. *Id*.

We turn to our review of the record in the present case. Marc Mollere, Vice-President of Dial, Team Leader for Wal-Mart and Sam's, arranged and coordinated the August 2007 sales meeting. Mollere testified that he was responsible for setting up the meeting, making arrangements for the meeting to be held at the Pinnacle Country Club Board Room, making arrangements for food to be served, and making arrangements for golf as well. Mollere further testified that the purpose of the meeting was to review all of Dial's business operations, financials, sales opportunities, and sales plans. Mollere testified that the agenda for the sales meeting included representation and presentation from Dial's headquarters from operations and sales planning.

Mollere further testified that the golf outing was a "team building exercise," and he planned to bring personnel from headquarters to the area and allow local Dial personnel access among the group that normally did not have as much access to each other. Mollere testified that the golf outing was a team building exercise and the purpose of the golf was to allow the "free flow exchange of – – of thoughts and idea[s] around the business [to] . . . take place that weren't necessary [sic] a specific part of the business meeting agenda that I had laid out" and to promote "dialogue . . . [to] occur that maybe wouldn't otherwise", "allow people to let their guard down a little bit", and allow ideas to the business that wouldn't normally come out of an organized meeting. The golf outing was not required, but the

SLIP OPINION

majority of attendees participated in the outing.

Mollere further testified that Dial paid for all the expenses related to the meeting, including golf-club rental, golf-cart rental, and golf greens' fees. Mollere also testified that page one of the two-page agenda for the August 8, 2007 meeting included meetings from 7:30 a.m. until noon, lunch, and a team dinner with spouses at 6:00 p.m. The second page entitled "Dial Team Building Golf Outing" provided tee times that were assigned by "random draw" for the afternoon. Finally, Mollere testified that, as a team building exercise, the golf outing was "absolutely" beneficial to Dial.

Curtis testified that at the time of the accident he was working for Dial in its finance department, was invited to do a presentation at the August 8, 2007 meeting, and traveled to northwest Arkansas for the meeting. Curtis testified that his trip was one of many sales trips he was making across the nation to field sales offices to explain customer profitability. Curtis also testified that Dial paid for all of the expenses of the trip. He further testified that the majority of people in the morning sales meeting played in the team-building golf event. Curtis said that he received an August 1, 2007 email with an agenda that included "Team Building – we will be playing golf" at 1:00 p.m. He also said that he received an email on August 7, 2007, with an updated email that again stated golf was on the agenda of the meeting, "We will begin at 7:30 a.m. so please arrive a few moments earlier so we can start on time. We have a full agenda and will be challenged to get through it on the fun activity. . . . We do not have any flexibility on when to tee off for golf." He also testified that he considered the golf a fun activity that was a perk of his employment.

Lemna testified that he traveled with Curtis to northwest Arkansas to meet with the Wal-Mart team. The event was a Dial sponsored event. Lemna testified that Dial paid for all the expenses related to the trip, including the golf outing. Lemna further testified that, in his opinion, the golf phase of the meeting was mandatory because it was "part of the agenda," and it was on "the list of things to do." He further testified that all the activities were there together at the clubhouse. He stated that he plays golf three to four times a year and "they're all for company functions." Finally, Lemna testified that he played golf that day because it was part of the agenda.

In sum, the testimony demonstrates that neither Curtis nor Lemna resided in the State and but for their employer's sales meeting, neither would have been at the Pinnacle golf course. Further, the testimony demonstrates that the two men were there for a sales meeting, which included lunch and the continued discussion and free flow of ideas regarding Dial's business while playing golf and having a team dinner with spouses. Based on our standard of review, the Commission's decision that Curtis's injury occurred within the scope of his employment is supported by substantial evidence.

Finally, Curtis asserts that the golf cart was not a place of work and cannot therefore be considered within the scope of employment. However, in *Barnes v. Wilkiewicz*, 301 Ark. 175, 177, 783 S.W.2d 36, 38 (1990), "we expanded the definition of the work place, determining that such a place was not static in the sense of being limited to the employer's physical premises or actual place of business." *Brown*, 326 Ark. 691, 697, 932 S.W.2d 769, 773; *see also Miller* II, 2013 Ark. 23 at 6, 425 S.W.3d at 727. Accordingly, we reject Curtis's

SLIP OPINION



argument that the golf cart was not a place of work.

*Co-Employee Immunity*

Next, because we have held that substantial evidence supports the Commission's decision that the event was within the scope of employment, we must review whether the Commission's decision that Lemna was entitled to immunity was supported by substantial evidence. Curtis contends that although Dial paid for the event, Curtis was injured during a fun, voluntary event and Lemna was not charged with providing a safe work place; thus, the Commission erred in extending immunity to Lemna. Stated differently, Curtis argues that the men were not at work on the golf course, but golfing for pleasure.

Again, Ark. Code Ann. § 11-9-105 provides an employer immunity from liability for damages in a tort action brought by an injured employee. "This rule, known as the exclusivity doctrine, arises from Arkansas Code Annotated section 11-9-105(a) (Repl. 2012), which provides that '[t]he rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, shall be exclusive of all other rights and remedies of the employee.'" *Porocel Corp. v. Cir. Ct. of Saline Cnty*, 2013 Ark. 172, ___ S.W.3d ___ (internal citations omitted). We recently examined our case law for negligent or injurious actions by co-employees in the context of whether such employees were third parties not immune from suit based on the duties they were performing or the roles they were undertaking at the time. In *Miller II*, 2013 Ark. 23 at 6–8, 425 S.W.3d 723, 727–28, we reaffirmed our case law and recounted our law regarding co-employee immunity and explained:

14

SLIP OPINION

We have previously examined these statutes with regard to claims against co-employees and whether such employees were third parties immune from suit as is at issue here. *Brown*, 326 Ark. 691, 932 S.W.2d 769. We have a long line of cases that have reviewed co-employee immunity. In *King v. Cardin*, 229 Ark. 929, 319 S.W.2d 214 (1959), we held that a negligent co-employee is a third party and that our workers' compensation law does not prevent an employee from maintaining an action for the negligence of a fellow employee. Then, in *Neal v. Oliver*, 246 Ark. 377, 438 S.W.2d 313 (1969), we held that an employer cannot delegate its duty to provide a safe work place to an employee. *See also Allen v. Kizer*, 294 Ark. 1, 740 S.W.2d 137 (1987). Next, in *Simmons First National Bank v. Thompson*, we held that a supervisory employee was immune from suit for failure to provide a safe workplace. 285 Ark. 275, 686 S.W.2d 415 (1985). We then extended that immunity to nonsupervisory employees who failed to provide a safe place to work when the injury occurred. *Allen, supra*. In *Barnes v. Wilkiewicz*, 301 Ark. 175, 177, 783 S.W.2d 36, 38 (1990), "we expanded the definition of the work place, determining that such a place was not static in the sense of being limited to the employer's physical premises or actual place of business." *Brown*, 326 Ark. at 697, 932 S.W.2d at 773. In *Brown*, we also held that co-employees who are fulfilling the employer's duty to provide a safe workplace are immune from suit under Ark. Code Ann. § 11-9-105, and we distinguished our holding in *King supra*, because the third party in *King* was not fulfilling the duties of his employer of providing a safe workplace. *Brown*, 326 Ark. at 698, 932 S.W.2d at 774.

*Brown* is directly on point for purposes of Miller and Bratt's appeal. In that case, the co-employee, Finney, was operating a vehicle at the direction of his employer, just as Enders was operating the helicopter. Brown and Finney were part-time co-employees who were employed to catch chickens for their employer. Neither party had any supervisory duties. Finney was delegated the job of driving the employees to the site, or farm, where the chickens were located. While Finney was driving, an accident occurred, and Brown was injured. Brown recovered worker's compensation and then sued Finney on a tort claim. The circuit court dismissed Brown's claim, and we affirmed, holding that Finney was performing the duty of his employer, to provide safe transportation, and was immune from liability under Ark. Code Ann. § 11-9-105.

In *Miller* II, we affirmed the Commission and held that "Enders was neither Miller and Bratt's supervisor nor their employer or employee. The record demonstrates that Enders was a co-employee charged with the employer's duty to provide a safe workplace. Enders's sole responsibility was to operate the workplace, a roving helicopter, in a safe manner and to

15

safely transport patients. . . . Further, as the pilot-in-command, Enders was delegated the authority concerning matters of flight safety and aircraft operation. Accordingly, Enders's only job was to provide safe air ambulance transportation for EMS patients and employees." *Id.*

Curtis asserts that *Miller II* is distinguishable from his case because in *Miller II* the tortfeasor, Enders, was charged with providing a safe workplace and here, Curtis was not. Enders's sole job was to transport patients safely– because it was a roving workplace but here, Curtis contends that there is no evidence to support that Dial charged Lemna with the responsibility of a safe workplace or that his sole responsibility was to safely operate a roving workplace. Rather, he asserts that the golf outing was just for fun. Lemna responds that *Miller II* is on point and Lemna, like Enders in *Miller II*, acted as an extension of the employer to provide a safe work place on the golf course.

This court has consistently interpreted Ark. Code Ann. § 11-9-105 to extend immunity to co-employees, such as Lemna, for actions arising from the alleged failure to provide a safe workplace because those employees are charged with the employer's nondelegable duty of providing a safe workplace. Here, Lemna drove the golf cart for the two men to participate in Dial's "team building golf outing." Stated differently, Lemna drove their work vehicle that day and maintained the duty to provide on behalf of his employer, the nondelegable duty of the employer to provide a safe work place. As in *Brown*, *supra*, and *Miller II*, *supra*, the co-employees both drove vehicles; here, Lemna likewise drove a vehicle on behalf of his employer in the course of his employment on the day of the

16

accident. Regardless of whether Lemna had other duties and responsibilities as an employee, based on the record before this court, Lemna had the duty to provide a safe environment while he operated the vehicle during the team-building activity as an arm of the employer. The record demonstrates that Lemna was delegated the job of driving the vehicle at the time of the accident and was therefore charged with providing a safe work place. Accordingly, in reviewing the Commission's decision, we hold that it is supported by substantial evidence.

Based on the discussion above and our standard of review, we hold that there was substantial evidence to support the Commission's decision that Lemna was entitled to immunity, and we affirm the Commission's findings.

*Constitutionality of Co-Employee Immunity*

For his third point on appeal, Curtis asserts that the extension of employers' tort immunity pursuant to Ark. Code Ann. § 11-9-105 is in contravention of article 5, section 32, of the Arkansas Constitution. However, the parties agree that our decision in *Miller II*, 2013 Ark. 23, 425 S.W.3d 723, disposes of Curtis's third point on appeal. We agree and therefore do not reach the merits of this third point on appeal because we addressed this claim in *Miller* and held "In reviewing the statute and art. 5, § 32, we find no error in the Commission's findings of fact and conclusions of law. We have consistently afforded immunity to co-employees that are acting as an arm of the employer. This extension does not limit recovery; it cloaks certain co-employees in limited fact scenarios with immunity as an employer when they are fulfilling their employer's duties to provide a safe work place."

Affirmed; court of appeals' opinion vacated.

17

HANNAH, C.J., and CORBIN and DANIELSON, JJ., dissent.

**DONALD L. CORBIN, Justice, dissenting.** I respectfully disagree with the majority's conclusion that the Arkansas Workers' Compensation Commission properly exercised jurisdiction in the instant case. The majority erroneously concludes that the Commission had jurisdiction in this instance because Appellant William Curtis was injured in Arkansas and *could* seek workers' compensation benefits under Arkansas law and, thus, the Commission had a legitimate interest in the injury. Moreover, the majority further concludes that, because Curtis filed an action before the Commission and did not appeal the circuit court's order dismissing his negligence suit, it was proper for the Commission to exercise jurisdiction. Both of these conclusions are simply wrong.

The mere fact that the injury occurred in Arkansas and that Curtis could have sought workers' compensation benefits in Arkansas does not negate the fact that he sought and received benefits in another jurisdiction—Arizona. If Curtis had sought additional benefits from his employer under the Arkansas Workers' Compensation Act then clearly the Commission would have jurisdiction. That was the situation presented in *Williams v. Johnson Custom Homes*, 374 Ark. 457, 288 S.W.3d 607 (2008), a case the majority now cites to in support of its conclusion. *Williams* simply does not apply here.

In *Williams*, the appellant lived in Arkansas and worked in Arkansas for an Arkansas corporation. But, when the appellant sustained a work-related injury, he received workers' compensation benefits from the Ohio Bureau of Worker's Compensation because the appellant's paychecks were processed and came from the appellee Paysource, Inc., an Ohio

company. Upon the recommendation of his doctor, the appellant sought to amend his compensation claim to request additional benefits for injuries to his back and left knee. When the Ohio Bureau denied his claim for additional benefits, the appellant filed a claim for workers' compensation benefits in Arkansas. The Commission denied the claim, however, because the appellant was estopped by the election-of-remedies doctrine from seeking compensation benefits in Arkansas after he had already sought and received such benefits in Ohio. This court reversed and remanded, holding that it was error for the Commission to analyze the claim under the doctrine of election of remedies. The court explained that the election-of-remedies doctrine did not apply because it bars more than one recovery on inconsistent remedies, such as a tort remedy and a contract remedy, not a situation in which a claimant seeks only one remedy in multiple forums. This court further noted that the law was well settled that all states having a legitimate interest in the injury have the right to apply their own diverse workers' compensation rules and standards, either separately, simultaneously, or successively. *Id.*

*Williams* is easily distinguished from the instant case. This is not a case where Curtis is seeking to recover additional workers' compensation benefits. Under *Williams*, if Curtis had sought compensation benefits in Arkansas after receiving such benefits in Arizona, the Commission could have applied its own rules and standards for evaluating claims separately and successively to the rules and standards of the Arizona Workers' Compensation Commission. *See, e.g.*, *Robinson v. Ed Williams Constr. Co.*, 38 Ark. App. 90, 828 S.W.2d 860 (1992) (explaining that claims for compensation benefits may be instituted in both states

having jurisdiction over the claim). That is simply not the issue presented in this appeal.

The mere fact that Curtis's accident occurred in Arkansas does not trigger the jurisdiction of the Commission or application of the Arkansas Workers' Compensation Act. Under the majority's analysis, the fact that another state has already adjudicated a claim and paid out benefits is wholly irrelevant, as is the fact that there has been absolutely no request for compensation benefits made to our Commission. This is the fatal flaw in the majority's conclusion.

The exclusive-remedies provision which allows an employer, or in this case a co-employee, to assert that he or she is entitled to tort immunity is codified at Arkansas Code Annotated section 11-9-105(a). It provides in relevant part that "[t]he rights and remedies granted to an employee subject to the provisions of this chapter . . . shall be exclusive of all other rights and remedies." Ark. Code Ann. § 11-9-105(a) (Repl. 2012). Curtis has not tried to avail himself of any rights or remedies under this section, and he is not an employee subject to the provisions of this chapter. The only reason that Curtis asked the Commission to consider his claim was that the circuit court dismissed his negligence suit on the basis that the Commission had exclusive jurisdiction to determine the applicability of section 11-9-105(a).[1]

Nothing in the Arkansas Workers' Compensation Act gives the Commission the authority to determine the application of another state's compensation laws. In fact, the issue

---

[1]The majority makes a passing reference to the fact that Curtis did not appeal the circuit court's order of dismissal. Such a fact is irrelevant, particularly where this court dismissed the appeal of a circuit court's order dismissing a case on the ground that the Commission had to first decide the question of whether a person enjoys immunity from suit under the Arkansas Workers' Compensation Act. *Miller v. Enders*, 2010 Ark. 92.

SLIP OPINION

of which forum's law should apply was argued at the hearing before the administrative law judge ("ALJ"). There, Lemna stated his belief that the Commission had sole jurisdiction to determine jurisdiction but went on to state that he

> [did not] think that that necessarily precludes the Commission from performing a choice-of-law analysis under Arkansas law, specifically *Wallis v. Mrs. Smith's Pie Shop* and its progeny, to make a determination whether or not Arkansas law or Arizona Workers' Comp. law applies. And in that regard, it's Respondent's position that Arizona Workers' Comp. law actually should apply in this matter.

He argued further that if the Commission were to determine that Arizona law applied, the proper forum to determine the issue of tort immunity would be the Arizona Workers' Compensation Commission. Curtis replied that he believed that it was not appropriate for the Commission to determine whether Arizona law applied because the only question the Commission could address is whether the Arkansas Workers' Compensation Act applied.

Curtis was correct, a fact recognized by the ALJ in the written opinion filed on August 8, 2011, which stated as follows:

> I find that the Arkansas Workers' Compensation Commission has jurisdiction of this claim and that application of Arkansas Workers' Compensation law is appropriate. First, I know of no authority which would allow the Arkansas Workers' Compensation Commission to apply Arizona workers' compensation law. Secondly, this case is before the Arkansas Workers' Compensation Commission because of a tort claim filed in Benton County, Arkansas, and according to the Arkansas Supreme Court when a party to a lawsuit raises a question of whether a person enjoys immunity as an employer under the Workers' Compensation Act, the Commission must first determine that issue. *Miller v. Enders*, 2010 Ark. 92.

The full Commission then affirmed and adopted the decision of the ALJ. Thus, clearly the ALJ and the Commission realized there was no authority for the Commission to apply Arizona law to the facts of this case. At that point, the Commission should have

acknowledged that the mere interest in Curtis's injury was not enough to trigger its jurisdiction in this case where Curtis sought and received benefits under the workers' compensation laws of another jurisdiction.

It simply makes no sense to apply the tort-immunity provision of section 11-9-105(a) to Curtis's negligence claim filed in Arkansas. The question of whether Lemna is entitled to tort immunity should be decided by looking to Arizona's compensation laws, as Arizona was the jurisdiction to determine that Curtis had sustained a compensable injury and the appropriate award of benefits, and it paid such benefits. Moreover, it is irrelevant to a determination of jurisdiction that Curtis filed an action before the Commission. Curtis's filing does not somehow constitute a waiver of subject-matter jurisdiction. It is well settled that subject-matter jurisdiction is always open, cannot be waived, can be questioned for the first time on appeal, and is a matter this court is obliged to raise on its own when the parties do not. *Jonesboro Healthcare Ctr., LLC v. Eaton-Moery Envtl. Servs., Inc.*, 2011 Ark. 501, 385 S.W.3d 797. Accordingly, I disagree with the majority's conclusion that the Commission properly determined it had jurisdiction and exercised that jurisdiction to determine that Lemna was entitled to immunity from suit.

Finally, as to the merits of Curtis's appeal, I disagree with the majority's decision to affirm the Commission's conclusion that Lemna was entitled to tort immunity under the theory that he was carrying out his employer's duty to provide a safe work-place environment. The facts simply do not support such a conclusion. The evidence was undisputed that Curtis and Lemna were taking turns driving the golf cart throughout the

22

game, depending on whose turn it was to take a shot. There was also evidence of alcohol consumption during the course of the golf game. This case is easily distinguishable from *Miller v. Enders*, 2013 Ark. 23, 425 S.W.3d 723, and the majority's reliance on that case is misplaced. Thus, I likewise disagree with the majority's ultimate conclusion that Lemna is entitled to tort immunity under the facts of this case.

For these reasons, I respectfully dissent.

HANNAH, C.J., and DANIELSON, J., join in this dissent.

*Blair & Stroud*, by: *H. David Blair* and *Barrett S. Moore*, for appellant.

*Smith, Williams & Meeks L.L.P.*, by: *Charles H. Crocker, Jr.*, for appellees.